(No. 25317.—)

The People of the State of Illinois, Defendant in Error, *vs.* Emil Grudecki, Plaintiff in Error.

*Opinion filed April 10, 1940.*

JAMES M. BURKE, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-
NEY, State's Attorney, and A. B. DENNIS, (EDWARD E.
WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and
BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Emil Grudecki and Rocco Allegretti were found guilty
by a jury in the criminal court of Cook county of having
committed rape upon Jean Domarack, sixteen years of age.
Motions for a new trial and in arrest of judgment were
overruled and they were sentenced to five years in the peni-
tentiary. Emil Grudecki has sued out this writ of error.

The complaining witness testified that on July 25, 1938,
a man by the name of Tracey, whom she knew only slightly,
called for her at about 5:00 A. M. to take her to work;
that she got into the car, a 1938 two-door Ford sedan, and
drove with Tracey to her girl friend's home to take her
to work. This girl was not yet ready and so they drove
to the corner of Huron and Lincoln streets in Chicago; that
Tracey then left the car and Rocco Frank Urgo took over
the driving duties. Urgo then drove her a block or so when
she jumped out of the car while it was in motion. She
testified that the plaintiff in error, Grudecki, was standing
near-by and pushed her into the back seat of the car and
got in with her. Urgo and Grudecki then drove her to
Urgo's garage where both of them attempted to force her
to have sexual relations with them. Unable to accomplish
their purpose she testified that they called in Rocco Alle-
gretti. She struggled with him but he finally succeeded in

having intercourse with her while Urgo held her shoulders. Prosecutrix further claims that Grudecki, plaintiff in error, Urgo and Tracey, in that order, forcibly had relations with her. All of this action allegedly took place on the back seat of the Ford. She testified that these other men were outside the car when plaintiff in error committed the act with her; that during the attacks she attempted to make an outcry but that plaintiff in error placed a sponge in her mouth. Following the attacks by these men, one Harley came into the car, but she persuaded him not to touch her; that he took her to her girl friend's house at about 7:00 A. M. that morning; that her girl friend, Jean Wojcik, took her to the office of Dr. Czwalinski who examined her, and she made complaint to the police who came to the doctor's office at about 10:00 o'clock the same morning. The record does not show that Tracey and Urgo were ever apprehended or, except for the testimony of the prosecutrix, that they ever existed. Upon cross-examination the complaining witness testified that Grudecki "never got fresh with me" prior to the time of the alleged attack.

Dr. Czwalinski testified that complaining witness came to his office shortly before 8:00 o'clock on the morning the attack was alleged to have taken place; that he made an examination of her private organs; that the vagina was lacerated, hymen ruptured, that there were several bruises on the inside of her thighs; that her undergarment had a few blood stains on it, and that these injuries described were of recent origin.

Jean Wojcik testified that she had known prosecutrix for about four years; that she came to her home on the morning of July 25, 1938, at about 7:00 A. M.; that she was in a dishevelled state, her clothing torn, that she was bleeding from her private parts, and that she took her to the doctor's office.

Emil Grudecki, plaintiff in error, testified in his own behalf, that he was nineteen years old; that he had known

the complaining witness for five years, and that he had been out with her about ten times. He stated that he had never made any improper advances to her and that he had never had any sexual relations with her; that he was married on May 7, 1938; that he had talked to the complaining witness a few days after he was married and that she told him that some day she would get even with him for marrying this other girl; that on July 24, 1938, his wife was in the Norwegian Hospital in Chicago where she had an appendicitis operation; that he was with her on Sunday evening at the hospital; that he went home a little after 9:00 P. M. and went to sleep about 11:00 o'clock; that he did not get up that night at all and slept until 7:30 the next morning. He denied that he was present when the alleged acts occurred. He denied knowing Tracey, Urgo or Allegretti.

Ann Dymak, testifying in behalf of the defendant, stated that Grudecki was married to her sister; that on July 24, 1938, he was living with her mother, his wife, her sister and herself in Chicago; that she saw him at the hospital on the night of July 24, that her sister, Josephine, was also at the hospital and that the three of them were back home about 9:00 o'clock; that defendant read a paper and then went to bed and that she awakened him about 7:30 in the morning.

Josephine Dymak testified, in behalf of the defendant, that she was a sister-in-law of Grudecki; that he lived with her mother, her sisters and herself; that she was with him at the hospital on Sunday evening July 24; that they were back home together again about 9:00 o'clock; that defendant read the paper and went to bed; that she got up next morning about 7:30 and that the defendant also got up about that time.

Two men testified that defendant had a good reputation for decency, chastity and morality in the community in which he lived.

We have carefully reviewed the entire record and find it difficult to reconcile the conflicting testimony. Where a conviction of rape depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecuting witness ought to be corroborated by some other evidence, fact or circumstance, in the case. (*People* v. *Bolik,* 241 Ill. 394; *People* v. *Kazmierczyk,* 357 id. 592; *People* v. *Nelson,* 360 id. 562.) The record before us is absolutely devoid of any other fact or circumstance or testimony (other than that of prosecutrix) which specifically connects the defendant with this crime. Her statement to the doctor and to Jean Wojcik, under all the circumstances of this case, cannot be held corroborative of her further than that she did have sexual intercourse with some man or men. If she made continual outcry, as she testifies, it is more than likely that some person would have heard her even though the attack occurred early in the morning.

The evidence before us is not sufficient to remove all reasonable doubt as to the defendant's guilt. Where we believe that the conviction is founded upon unsatisfactory evidence and there remains a grave and serious doubt of the guilt of the accused it is the duty of this court to reverse the judgment of conviction. *People* v. *Nemes,* 347 Ill. 268; *People* v. *Fitzgibbons,* 343 id. 69; *People* v. *Kazmierczyk, supra; People* v. *Samuels,* 366 Ill. 406.

The entire record leaves us with a grave and substantial doubt of the defendant's guilt.

The judgment of the criminal court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*