**WILLIAMS v. UNITED STATES.**

No. 8038.

United States Court of Appeals for the District of Columbia.

Decided Oct. 12, 1942.

Mr. Saul G. Lichtenberg, of Washington, D. C., for appellant.

Mr. Bernard Margolius, Assistant United States Attorney, with whom Messrs. Edward M. Curran, United States Attorney, and Allen J. Krouse and Charles B. Murray, Assistant United States Attorneys, were on the brief, all of Washington, D. C., for appellee.

Before STEPHENS, VINSON, and EDGERTON, Associate Justices.

VINSON, Associate Justice.

Appellant (defendant) was indicted on two counts of assault with a dangerous weapon and one count of rape. He was found guilty of all three offenses and the jury added the death penalty to the rape verdict.

There was sufficient evidence, if believed, upon which the verdict, guilty of rape, could be based. Likewise, there was sufficient evidence, if believed, upon which it could be concluded that defendant did not commit the crime. The jury, not the court, is the trier of credibility. And if there were nothing more to the case than this, we should affirm. But in our view a different disposition of the case is required for reasons irrespective of the evidence. Thus there is no need to go into the evidence.

The defendant, in substance, makes three main points on this appeal, which concerns only the rape conviction. The first is that the indictment, by its use of words, charges that the girl raped herself rather than charging that defendant did. The defendant quotes a part of the indictment in support of his argument. There is one inaccuracy in his quotation. It is perhaps possible for one to obtain in some degree, from the excerpt quoted, the impression that the prosecuting witness raped herself. That is due, however, mainly to the inaccuracy in quotation and partly to the wholly uncalled for quasi-Chaucerian style of the indictment. A reading of the indictment as a whole shows that defendant's inference is entirely without merit. Defendant's second point is that the indictment is defective because it was signed by an Assistant District Attorney rather than by the United States Attorney. The case of Robinson v. United States,[1] in which the opinion was filed after the instant case was heard, answers this contention. Defendant's third point is in

---

[1] — App.D.C. —, 128 F.2d 322, decided June 1, 1942.

effect that the evidence did not afford a sufficient base upon which to place a death penalty. At times defendant stated there was not sufficient evidence to support the verdict of guilty. At other times in his brief and upon oral argument here, it was unequivocally stated that the evidence was sufficient to find defendant guilty, but defendant's counsel was at a loss to understand why upon this set of facts the jury returned the death penalty. Many persons probably would not have done so. This jury did. Congress has seen fit to give that power to the jury.[2] There is nothing a trial or appellate court can do to reverse its judgment in inflicting the death penalty when there is sufficient evidence to support a verdict of guilty.

■ Upon the issues presented by defendant, we would be constrained to affirm. It is our custom, however, in cases of serious criminal offenses, to check carefully the record for error prejudicial to defendant which he did not urge.[3] In this case we have found such error. Several might be discussed, but since the Judge's charge to the jury was definitely erroneous and prejudicial, we will confine our discussion to the more important omissions therein which we think require a reversal of the judgment.

The trial judge was from another district brought here to help our overloaded district court. He probably was not familiar with all the legal requirements of this jurisdiction. The law in respect of charging a jury is a kind of law that will naturally develop many variations from jurisdiction to jurisdiction. We are concerned here, however, with more than favorite niceties of expression or words that have become words of art. This charge as a whole does not give the defendant the protection that the law requires.

■ A basic defect of the charge is the failure to discuss and define the offenses included within the indictment. Rape was not defined generally, much less broken down into its constituent elements; naturally, as a result, the elements were not discussed or defined. The jury was not told what assault with intent to rape is,

nor how it is distinguished from rape. The Court at the conclusion of its charge was asked to instruct with regard to assault with intent to rape and simple assault. It then proceeded to tell the jury that it might convict of those offenses but wholly failed to tell it of what those offenses consisted.

Under the circumstances of this case, if the jury had known that several crimes with their several factors must come in for consideration and had known the meaning of the factors, such as assault, intent, lack of consent, resistance to the full under the circumstances, physical force, fear, the necessity of some penetration, it might have concluded that this defendant was not guilty of rape or even of any offense, or if he were guilty of rape, his guilt was not such as would require the extreme penalty. We have always been proud that under our law the elements which go to make up a crime are definitely established. To insist that a jury be told what rape is, and, when circumstances require, what the included offenses are, in the eyes of the law, is not to demand meaningless ritual. The average man has some idea of what murder is, but we would not expect a judge to say, Jurors, you know what murder is, go and decide if this man is guilty of it. To say that the jury, under proper instruction, might not have found defendant guilty or might not have inflicted the death penalty is not to interfere with its judgment. We merely insist that the judgment of a jury be informed and be made under the safeguards of correct procedure.

■ In no part of the charge was the jury even told that it could return a verdict of not guilty. That is error. But more than a mere statement that defendant can be acquitted is necessary. The jury must be told at least once, in some unequivocal language, that if it believes from the evidence that defendant is innocent, or if it believes from the evidence that the Government has not proved each and every element of the crime beyond a reasonable doubt, it must return a verdict of not guilty.[4]

The failure to make such a statement was especially harmful in this case. First,

[2] D.C.Code (1940 ed.) § 22—2801.

[3] Catoe v. United States, — App.D.C. —, 131 F.2d 16, decided October 5, 1942; Robinson v. United States, — App.D.C. —, 128 F.2d 322, decided June 1, 1942; Bishop v. United States, 71 App.D.C. 132, 107 F.2d 297; McAffee v. United States, 70 App.D.C. 142, 151, 105 F.2d 21, 30; Kinard v. United States, 68 App.D.C. 250, 254, 96 F.2d 522, 526.

[4] McAffee v. United States, 70 App.D. C. 142, 150, 151, 152, 105 F.2d 21, 29, 30, 31.

several possible offenses were included and such a statement must go to each of them. Second, the crimes with their constituent elements were not defined, so the jury could not possibly apply this proper reasonable doubt instruction. Third, the charge as a whole gives the impression of a tacit assumption that some kind of a verdict of guilty would be returned.

It can now be clearly seen that to hold this charge sound would be to assume that jurors are wise in the law; that they know the constituent elements of rape, that they know what is an assault with intent to commit rape, that they know the full distinction between the two; that they know the definitions of the lesser offenses embraced; that they know all the circumstances under which a verdict of not guilty is proper; and that they know the proper application of the reasonable doubt criterion. Such an assumption violates the accepted division of functions between judge and jury. It is almost, if not, as important to a defendant to have a jury instructed on the law applicable to his particular case by the judge, who knows the law, as to have a jury of his peers. The latter is supposed to safeguard our institution of fair trial by insuring impartiality. But of what value is an open mind, if it does not know, with clear delineation, the issues upon which it is to pass judgment? Just as a lawyer might be ignorant in a meeting of scientists, so may a juror be in his casual acquaintance with the law. The jury, a group of responsible citizens, is entitled to this legal instruction if it must accept the duty of passing upon the very life and death of a man. The law requires it.

Reversed.