## McGUINN v. UNITED STATES.

### No. 10898.

United States Court of Appeals
District of Columbia Circuit.

Argued May 17, 1951.

Decided June 28, 1951.

Joseph A. McMenamin, Washington, D. C., with whom Robert I. Miller, Washington, D. C., was on the brief, for appellant. Curtis P. Mitchell, Washington, D. C., also entered an appearance for appellant.

Joseph A. Sommer, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before CLARK, WILBUR K. MILLER, and BAZELON, Circuit Judges.

CLARK, Circuit Judge. ·

The appellant was convicted in the United States District Court for the District of Columbia by a jury on a two count indictment which charged rape pursuant to D.C.Code § 22–2801 (1940) and sodomy pursuant to D.C.Code § 22–3502 (1940). He has been sentenced to serve from four to twelve years in the penitentiary. From that final judgment he takes this appeal.

■■ The appellant has urged numerous errors before this Court. He first contends that there is insufficient corroboration as required by the rule in Kidwell v. United States, 1912, 38 App.D.C. 566, to sustain the conviction for rape. The rule in the Kidwell case was cited in Ewing v. United States, 1942, 77 U.S.App.D.C. 14, 135 F.2d 633, 635 which is also relied on by the appellant. The rule as stated in these cases requires only that there be circumstantial evidence to corroborate the testimony of the complaining witness in a rape case. As in the Ewing case the only direct testimony here was that of the complaining witness. There is ample corroboration here as in the Ewing case to bring this case within the rule laid down in the Kidwell case. In the Ewing case the complaining witness waited some twenty-four hours before reporting the attack on her. In the instant case the attack was reported to the nearest available person and the police as soon as the complaining witness could free herself from the appellant. She was in a nervous and crying condition at the time she reported the attack to a total stranger. The appellant was found as described by the complaining witness in the front seat with his pants and shorts down. As in the Ewing case the complaining witness had no motive to lie. The statements of the complaining witness were consistent throughout the proceeding while the appellant admitted the intercourse in writing and subsequently at the trial denied it. Similarly the appellant made inconsistent statements when he gave a detailed account of the crime to police and then testified on the stand that he was too drunk to recall what happened. In the Ewing case there was no signed confession as we have here.

■ The appellant next contends that the trial court erred in failing to give, in

substance at least, his prayers[1] No. 2–7, 9 and 9 as amended—12, and 14–16. Prayers numbered 3, 5, 6 and 7 were adequately covered and the appellant was not prejudiced because his prayers were not adopted as requested.

Prayers 2, 4, 9, 9 as amended, 12, 15 and 16 were properly denied partly because the correct portions of those prayers were given and the remaining portions, as requested, were incorrectly stated. The appellant's second prayer, which seeks to define the amount of force or degree of fear necessary to negative consent, is incorrect for it would require that the fear be mortal. As we held in the Ewing case "fear of death or grave bodily harm" was all that is required, and the trial court so instructed.

Prayers number four and sixteen demand proof wholly inconsistent with guilt and are consequently incorrect. The only amount of evidence necessary as the court instructed was that which would exclude "the hypothesis of innocence reasonably viewed and reasonably evaluated." Curley v. United States, 1947, 81 U.S.App. D.C. 389, 160 F.2d 229, certiorari denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.

Prayers number nine and nine amended dealt with consent. The court properly instructed the jury "there must be an absence of consent unless the consent is induced by putting the woman in fear of grave bodily harm or death or by the exercise of actual force against her person." Prayer number nine and nine as amended assume as a fact that the complaining witness did not offer opposition and should have been denied. Nine as amended further requires that a specific intent be found to exist. Rape is not a crime which requires a specific intent.

Prayer number fifteen is again inconsistent with the Ewing case. The appellant sought by this prayer to require resistance to the utmost, and this is not the law in our jurisdiction.

Prayer number ten is wholly irrelevant to the issue of the appellant's guilt or innocence and should not have been granted. Prayer number eleven was properly denied, because there was no evidence to show that the doctor who examined the appellant was more peculiarly available to the Government than to the appellant. Similarly prayer number fourteen was properly denied because there was no evidence to show a mere narration of the attack.

The appellant next contends that the trial court should have declared a mistrial, because the prosecuting attorney in his opening statement commented that only one woman had survived the defense challenge. After an objection the trial court told the jury to disregard that remark as it was improper. Suffice it to say that no request was made for a mistrial. Since the appellant elected to take his chance on a verdict, without motion or exception, there is no foundation for the assignment of error. Yeager v. United States, 1900, 16 App.D.C. 356; Lorenz v. United States, 1904, 24 App.D.C. 337.

The appellant also complains of the fact that the prosecuting attorney commented in his argument on the fact that defense counsel did not make an opening statement because he did not know what the evidence would disclose. The trial court ruled this remark was proper and undoubtedly it was when not taken out of context. This statement was made with reference to the new story which the appellant gave on the stand in contradiction of his written confession. But besides this fact no request was made for a mistrial and there is no foundation for that assignment of error. Yeager v. United States, supra, and Lorenz v. United States, supra.

The appellant has been found guilty by a jury after a full and complete presentation of the evidence. By his assignments of error he, in effect, has asked this court to disregard the conclusions reached by the jury. However the verdict of a jury must be sustained when there is substantial evidence, taking the

---

1. Prayer is used in the District of Columbia to denote a requested instruction.

view most favorable to the Government, to support it. Morton ·v. United States, 1945, 79 U.S.App.D.C. 329, 147 F.2d 28 certiorari denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428.

Affirmed.

BAZELON, Circuit Judge (concurring in the result).

Appellant was convicted on two counts— one for rape and the other for sodomy. For reasons which I shall state, I believe that the conviction for sodomy should be reversed. I am bound to concur in the result reached by my brethren, however, since the rule is that a general sentence or judgment upon an indictment containing more than one count, with a verdict of guilty upon each, will be sustained if the verdict upon any count is good, and sufficient to support the judgment.[1] Nevertheless, I feel that it may serve the interests of the administration of justice and of this appellant who has been improperly convicted of the crime of sodomy to state briefly the reasons for my view that that conviction is fatally defective.

The code provision which defines sodomy and declares it to be a crime further provides that

"* * * in any indictment for the commission of any of the acts, *hereby declared to be offenses,* it shall not be necessary to set forth the particular unnatural or perverted sexual practice with the commission of which the defendant may be charged, nor to set forth the particular manner in which said unnatural or perverted sexual practice was committed, but it shall be sufficient if the indictment set forth that the defendant committed a certain unnatural and perverted sexual practice with a person or animal, as the case may be: *Provided,* That the accused, on motion, shall be entitled to be furnished with a bill of particulars, setting forth the particular acts which constitute the offense charged." [2]

The statute does not, however, make commission of "a certain unnatural and perverted sexual practice" a crime. The only acts "declared to be offenses," and hence covered by the procedural provisions set out above, are those defined in detail by the first part of the statute. That part reads:

"Every person who shall be convicted of taking into his or her mouth or anus the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth or anus of any other person or animal, or who shall be convicted of having carnal copulation in an opening of the body except sexual parts with another person, shall be fined not more than $1,000 or be imprisoned for a period not exceeding ten years. Any person convicted under this section of committing such act with a person under the age of sixteen years shall be fined not more $1,000 or be imprisoned for a period not exceeding twenty years. * * *

"Any penetration, however slight, is sufficient to complete the crime specified in this section. Proof of emission shall not be necessary." [3]

In this case, the trial court instructed the jury on the sodomy count by merely repeating the charge of the indictment which alleged that the accused had "committed a certain unnatural and perverted sexual practice." The court told the jury that "As to the second charge [which was sodomy], nothing more need be said except that these general principles of law that I have discussed, of course, apply to the second charge. It needs no further elaboration." He did not read that part of the statute defining the offense of sodomy to the jury nor did he describe or discuss

1. Whitfield v. State of Ohio, 1936, 297 U. S. 431, 438, 56 S.Ct. 532, 80 L.Ed. 778; Claasen v. United States, 1891, 142 U. S. 140, 146–147, 12 S.Ct. 169, 35 L.Ed. 966; Marzani v. United States, 1948, 83 U.S.App.D.C. 78, 86, 168 F.2d 133, 141; Shelton v. United States, 5 Cir., 1934, 69 F.2d 223. Appellant here was sentenced to 4–12 years which is within the limit possible for a rape conviction. See D.C. Code (1940 ed.), § 22–2801.

2. D.C.Code (1940), § 22–3502. (Emphasis supplied.)

3. Ibid.

any of the elements of the offense. This is error of the most fundamental kind. A trial court in a criminal case must instruct the jury " 'on all essential questions of law involved in the case' " [4] and those necessarily include the elements which constitute the crime charged. Here, the elements of sodomy are specifically spelled out in the statute but the jury was told nothing of them. Without a statement by the court of the essential elements of the crime, the jury is not equipped to perform its function, which is only to decide whether the evidence before it constitutes the act made criminal by the statute. As Chief Justice Vinson, then an Associate Justice of this court, said for the court in Williams v. United States, 1942, 76 U.S. App.D.C. 299, 300–301, 131 F.2d 21, 22–23 concerning similar errors not called to the court's attention by counsel:

"* * * This charge as a whole does not give the defendant the protection that the law requires.

"A basic defect of the charge is the failure to discuss and define the offenses included within the indictment. Rape was not defined generally, much less broken down into its constituent elements; naturally, as a result, the elements were not discussed or defined. * * *

"* * * We have always been proud that under our law the elements which go to make up a crime are definitely established. To insist that a jury be told what rape is, and, when circumstances require, what the included offenses are, in the eyes of the law, is not to demand meaningless ritual. The average man has some idea of what murder is, but we would not expect a judge to say, Jurors, you know what

murder is, go and decide if this man is guilty of it. To say that the jury, under proper instruction, might not have found defendant guilty or might not have inflicted the death penalty is not to interfere with its judgment. We merely insist that the judgment of a jury be informed and be made under the safeguards of correct procedure.

\* \* \* \* \* \*

" * * * It is almost, if not, as important to a defendant to have a jury instructed on the law applicable to his particular case by the judge, who knows the law, as to have a jury of his peers. The latter is supposed to safeguard our institution of fair trial by insuring impartiality. But of what value is an open mind, if it does not know, with clear delineation, the issues upon which it is to pass judgment? Just as a lawyer might be ignorant in a meeting of scientists, so may a juror be in his casual acquaintance with the law. The jury, a group of responsible citizens, is entitled to this legal instruction if it must accept the duty of passing upon the very life and death of a man. The law requires it."

Conventional proprieties and good taste cannot excuse leaving a jury in total ignorance to speculate on the definition of the very crime upon which they are sitting in judgment.

Counsel for the accused did not raise the issue at any time either in the trial court or on appeal. But Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., and the decided cases make it clear that we may notice errors as fundamental as this one on our own initiative.[5]

---

4. Tatum v. United States, 88 U.S.App.D. C. ——, 190 F.2d 612. See cases collected id. n. 4.

5. See cases collected in Williams v. United States, 76 U.S.App.D.C. at 300 n. 3, 131 F.2d at 22 n. 3; and Tatum v. United States, supra note 4, at n. 3.