**Henry WALKER, Appellant,**
v.
**UNITED STATES of America,
Appellee.**

No. 12063.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 16, 1954.

Decided March 24, 1955.

Petition for Rehearing In Banc Denied
May 16, 1955.

Mr. Howard C. Westwood, Washington, D. C., appointed by this Court, with whom Messrs. John W. Douglas and Alfred V. J. Prather, Washington, D. C., were on the brief, for appellant.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and John F. Doyle, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Indicted in October 1945, appellant in December 1953 was convicted of rape. His appeal presents two complaints:

11. Hayes v. Home Life Ins. Co., supra, note 2.

(1) that the trial judge mistakenly instructed the jury that appellant had admitted prior convictions of serious crimes; and (2) that the evidence is insufficient to support the jury verdict, particularly from the aspect of corroboration, or the lack of it.

## I

The prosecutrix, one Della Woodley, married at the time of the occurrence to one Riley Woodley, (since deceased), gave the only direct testimony concerning the circumstances before the crime and the details of its commission. She identified the appellant as the perpetrator. In the absence of the jury, attorneys appointed by the District Court and the trial judge fully advised the defendant of his rights and urged him not to take the witness stand. The trial judge said finally, " * * * this record of yours will undoubtedly be brought out and it may affect the weight that the jury is going to give your testimony." The judge explained the nature of the charge he would give on this point, emphasized that the Government must prove guilt beyond a reasonable doubt, and then asked: "Do you understand what the Court is talking about?" Walker answered "Yes, sir." [1] "Do you want to go on the stand or stay off the stand?" "On the stand." The Court: "You want to go on the stand despite what the Court has told you and despite the advice the lawyers have given you?" Walker replied "Yes, sir."

Appellant taking the witness stand, said "Let me tell my story, then I will answer your questions." [2]

On cross-examination the accused was queried concerning various convictions thus:

"Q. Are you the same Henry Walker who in 1941 was convicted of

---

[1] "The Court: Mr. Walker, you are the defendant at the bar and these two very fine attorneys have been appointed in your defense. * * * They are able men. They have had a lot of experience.

"Now, they have advised me that, in turn, they have instructed you that you can either go on the witness stand as a witness in your own behalf or you can stay off the stand. You are fully aware that you have a bad criminal record. You have been ten times charged with rape. You have been convicted four times. You got 20 years one time and you were pardoned. You got a conviction in May, 1935, of larceny, six months. You have served five years for rape. You have served a year and six months for rape.

"You have also been convicted of assault and battery and aggravated assault, apparently assault with intent to kill, and you got 3½ years to 7 on that.

"Now if you take the stand, those convictions can be brought out in evidence against you to affect your credibility as a witness.

"Now they have advised you, as they told me, advised you carefully. You don't have to go on the stand. You have been examined by two psychiatrists within less than 30 days, and they say you are of sound mind."

Appellant was 59 years of age and the prosecutrix was 22 at the time of the assault, according to the transcript.

[2] He then said: "Judge, Your Honor, and ladies and gentlemen of the jury, I was arrested in Pennsylvania, Philadelphia, Pennsylvania, the 25th day of June, and I was removed to Washington, D. C. on the 29th day of July, 1953, because a complaint had been made against me by one Della Woodley, November 28, 1944. Therefore, Della Woodley is my complaining witness, and if I am to go on trial this morning, according to the Ninth Amendment to the Constitution, she should be here to make her complaints before the Judge and the jury of this court.

"Della Woodley, my complainant, died August 12, 1953. Therefore, there is no complaining witness to appear before this Court to make any complaints against me however. And is it a lawful thing, Your Honor, to put a man on trial for his life four months and four days after the death of the complaining witness, to have gathered a group of people together to take this stand to tell the Court what somebody told them about me and what they believe about me without any facts, however, from Della Woodley?

"I know her as well as I know myself. I know her when I see her. This woman that taken this stand was not Della Woodley. I know her. I went with a long time, and this woman is not Della Woodley. Della Woodley, my prosecutor, is dead. That is all I got to say."

rape and robbery in the State of Virginia? (No response.)

"The Court: Are you the same person, Mr. Walker?

"The Witness: When my prosecutor makes a statement against me here, then I am going to trial. I am not on trial.

\*    \*    \*    \*    \*

"The Court: Do you understand the question?

"The Witness: My complainant is Della Woodley. When she takes this stand and makes her complaint against me, then I know I am on trial. I am not on trial.

\*    \*    \*    \*    \*    \*

"Q. The next question is, are you the same Henry Walker who in the year 1946 was convicted in the State of Pennsylvania of aggravated assault and battery?[3] (No response.)

"Q. Would you answer the question, please? (The witness shakes his head in the negative.)

"The Court: Which is your answer, that you will not answer the question or you were not convicted?

"The Witness: I thought I was being prosecuted by one Della Woodley. I know her as well as I know myself. That woman you all put up here, that ain't no Della Woodley. I know her.

"The Court: How about this conviction that the District Attorney asked you about?

"The Witness: Well, that there was something or other that somebody else had me in the court room for. I am not being tried for that.

\*    \*    \*    \*    \*

"Q. Are you the same Henry Walker who in 1935 was convicted in North Carolina of larceny? (No response.)

\*    \*    \*    \*    \*

"Q. Did you know Riley Woodley? (No response.)

"Q. Did you work with Riley Woodley? (No response.)

"Q. Did you work with him in Alexandria, Virginia? (No response.)

"The Court: Did you hear the prosecutor, Mr. Walker?

"The Witness: I am not going to answer it.

\*    \*    \*    \*    \*    \*

"Q. Did you know the young lady who took the stand here today, Della Woodley? A. It wasn't Della Woodley that I know.

"Q. Did you know Della Woodley? A. I did, yes, sir. She is dead and buried now.

"Q. Where did she live when you knew her? A. She lived here in Washington.

"Q. When was that that you knew her? A. When she gets on the stand and tell you what happened—

"Q. Did you know her in 1944? A.—then I will answer your questions.

"Q. Did you know her in 1944? A. She haven't made any complaints before this Court against me. Why should I get up here and testify against myself?

\*    \*    \*    \*    \*    \*

"The Court: What is your answer?

"The Witness: When Della Woodley makes her complaint against me, then I will answer him."

And so it went, question and answer down to and including a denial by the appellant that he had ever seen the prosecutrix "until she got on the stand. This is the first time in my life."

"The Court: Would the Court be correct that you say you did not take her?

---

3. The record of this conviction was not in evidence but it appears that Walker was sentenced to serve 3½ to 7 years for the offense. He was returned from Pennsylvania July 29, 1953, to stand trial in this case.

"The Witness: I don't know her.

"The Court: Then did you force her to have intercourse with you?

"The Witness: I never seen her before. * * * "

On redirect examination the appellant insisted that the Della Woodley of whom he spoke had died in the District of Columbia on August 12, 1953. A custodian of records from the Bureau of Vital Statistics testified that an examination of the records over a two year period failed to disclose the death of any person named Della Woodley.

The record discloses that the appellant was discerning and acute under examination, talking readily and glibly when supplying answers which served his position, while evasive as to incriminatory matter or nonresponsive when interrogated about his record. As to the various questions concerning prior criminal convictions, had the accused answered in the affirmative, that would have ended the matter. Had he answered in the negative, the Government would have been bound to introduce the record of his conviction and identify him as the person named in that record. To many such questions he made no response whatever; to others he made replies such as may be discerned from the samples herein reproduced. The trial judge made it clear that the jury was not "to indulge in any inference or any presumption that there is any relation between what he may have been or may not have been convicted of before, and you are not to indulge any presumption against him. It is merely that he, as any other witness, when he takes the stand, may have his credibility or the credence or the weight of his testimony attacked by the alleged possession of an alleged criminal record, in or-

der that you, as you are acquainted with that fact, may pass upon the credence or the weight or the credibility to [sic] which you will attach the testimony that he gave, and it is for no other reason." [4]

There was no objection at the trial to the instruction as given, despite the requirement of Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C. A.: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Had such timely objection been made, the judge would have had an opportunity to correct any claimed error and to give appropriate instructions to the jury. Villaroman v. United States, 1950, 87 U.S.App.D.C. 240, 241, 184 F.2d 261, 21 A.L.R.2d 1074. The evasiveness of the appellant and his failure or refusal when a witness, under the circumstances described, might properly permit the jury to draw such inferences as the situation suggested. Raffel v. United States, 1926, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054; Caminetti v. United States, 1917, 242 U. S. 470, 37 S.Ct. 192, 61 L.Ed. 442. The judge made it clear that the jury was "the sole judge of the facts," and on the basis of the whole charge, highly favorable in general to the appellant, it cannot fairly be said that the trial judge invaded the jury's province. We do not doubt that it is always better practice for the government to establish prior convictions by introducing a proper record. We cannot say, in the light of the whole case, that the failure to do so was here prejudicial.

## II

Although it is argued to us that the evidence is insufficient to support the ver-

---

4. In this same reference, the court further charged:

"Now in this particular case the defendant has taken the stand in his own behalf and he has testified to having a prior criminal record. If the Court should refer to the testimony in any wise, you are to understand that the Court is the sole judge of what the law of the case is and you are the sole judge of the facts, or what the testimony was. If your recollection differs from the Court's, you will understand that your recollection controls. The Court's recollection is that he was confronted with a record which showed convictions of the crimes of rape, and also of assault, assault with intent to kill, as the Court recalls."

dict, and more particularly, that the testimony of the prosecutrix lacks corroboration, we conclude otherwise. Because of the seriousness of the charge and of the unusual circumstances already suggested herein, we have carefully examined the entire transcript. In Kidwell v. United States, 1912, 38 App.D.C. 566, 573, this court said: "We are aware that a conviction for this offense will be sustained upon the testimony of the injured party alone. But where the courts have so held, the circumstances surrounding the parties at the time were such as to point to the probable guilt of the accused, or, at least, corroborate indirectly the testimony of the prosecutrix." [5] The Kidwell case has since been held to require corroboration in rape cases "in the sense that there must be circumstances in proof which tend to support the prosecutrix' story, * * * and for lack of it Kidwell's conviction for one offense was reversed." Ewing v. United States, 1942, 77 U.S.App.D.C. 14, 17, 135 F.2d 633, 636, certiorari denied, 1943, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145. See also, McGuinn v. United States, 1951, 89 U.S.App.D.C. 197, 191 F.2d 477. In the Ewing case we were asked to reverse the Kidwell rule, to "inquire again into the whole theory of the necessity of corroboration" and to adopt a requirement of "direct corroboration" in cases like this. This court rejected the suggestion saying:

"If by 'direct corroboration' is meant the testimony of an eyewitness, the result would be in most cases that conviction could not be had except upon the defendant's confession.[6] If it means less than that, it is hard to see how it could relate

to anything other than circumstantial evidence which supports the prosecutrix' story, and this is what the Kidwell case requires. * * *

"But to safeguard the defendant by requiring corroboration in this sense is one thing. To throw around him a wall of immunity requiring the testimony of an eyewitness or 'direct evidence,' which is more than circumstantial, in support of the prosecutrix' story, is another. We are satisfied that the rule stated in the Kidwell decision is one which should not be overthrown." Ewing v. United States, supra, 77 U.S.App. D.C. at page 17, 135 F.2d at page 636.

■ Although a strong argument can be made for the proposition rejected in the Ewing case and re-advanced here, the majority has concluded that the Kidwell rule as interpreted and applied in the Ewing case should be reaffirmed.

■ Professor Wigmore's treatment of the problem proffers a rationale not dissimilar to our earlier opinions and to the thinking upon which we base our present ruling. See 7 Wigmore, Evidence §§ 2061–2062 (3d ed. 1940). In any event, and in each case, the ultimate effect to be accorded to "corroboration" can be achieved through the exercise by the trial judge of his power to direct a verdict of acquittal whenever the government's case is inadequate, or to set aside a verdict when he is convinced it has been returned upon insufficient evidence.

In this case the prosecutrix was in her early twenties at the time of the attack and was married to a man known to have engaged in gambling and fighting.[7]

---

5. Commenting on the crux of the issue as there presented, the court said: "In this case defendant was convicted under this count upon the bald statement of the prosecutrix that the acts had extended continuously over a period of three years in the house of the defendant, where his wife and family resided. In view of the respectable standing of defendant, as shown by the evidence, and the incorrigible character of the prosecutrix and her bad reputation for truth and veracity in the community where she resided and was known, we do not think the evidence in support of this charge rises to the required standard." Id., 38 App.D.C. at page 573.

6. Cf. Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158.

7. Her husband, Riley Woodley, was employed in Alexandria. When Walker was questioned as to whether or not he worked in Alexandria with Woodley, he

About 8 P.M. on the night in question, she was approached at her residence by Walker. He told her that her husband was in trouble, hiding out, that he needed her, that Walker had him in a secluded spot where her husband awaited her. He told her not to get excited but her husband "wants you right away, because he had assaulted this fellow very badly and the police was looking for him." She went to her room, put on her hat and coat, and went with Walker a half block to a trolley line where they boarded the streetcar. At a transfer point they changed cars and continued their ride. In conversation en route, after the prosecutrix had told Walker of her efforts to stop her husband's gambling and fighting, Walker said "He was a nice boy, a little quick-tempered." They sat together for about a half hour, got off the streetcar in a secluded neighborhood and walked down a street running toward a railroad track "where he said he had my husband waiting on me." There he throttled her and by force pulled her down through knee-high bushes and grass, and after a struggle, assaulted her. She pleaded with him and told him if he would let her go she would not tell the police but would return home. She lost her hat at the scene. The prosecutrix then walked, perhaps a mile, before encountering a motorcycle officer whom she told "just what had happened to me and he called the scout car." Sgt. Howe of the Sex Squad saw her at the Tenth Precinct station. "She alleged she had been raped." Counsel thereupon objected, but the Government was entitled to the fact of her complaint. The officer described the back of her coat with several mud stains on it and a number of twigs. The sergeant called Policewoman Brownlow at the Women's Bureau and "directed her to report to the 10th Precinct and transport the complainant to Gallinger

Hospital for a pelvic examination * *," and added that she did so.[8] The prosecutrix testified she was taken to the Women's Bureau, thence to the hospital where she was examined and where her bruises were painted. Sgt. Howe took the prosecutrix to the scene the following day. There they found a hat belonging to the prosecutrix. There was evidence that the ground, some 50 feet from the railroad tracks, "had been considerably disturbed." The officer described the strip of brush and grass some 30 feet wide adjacent to the paved road. The scene was a "good eighth of a mile" from the nearest house.

There was no slightest suggestion of proof of any motive on the part of the prosecutrix to charge Walker with the offense. Her identification of him was positive and unchallenged. Indeed it is entirely reasonable to expect that she would never forget him, under the circumstances narrated, after riding the lighted streetcars for some thirty minutes, and then being attacked, as has been described. She testified that Walker left the scene and walked down the railroad tracks as she set out on foot and walked until she found the policeman. Her narrative was unshaken despite vigorous and competent cross examination. Highly important further were the circumstances attendant upon the appellant's taking the witness stand. He answered glibly enough on every point which he recognized to be favorable to himself and he either sparred or evaded or was silent otherwise. It is not likely that the jury was oblivious to his claim that the prosecutrix was "not the Della Woodley" he knew. The jury might have concluded that he failed to identify her. He testified that "Della Woodley" was dead but the records were otherwise. He refused to affirm or deny that on the night of the crime he had taken her "out

refused to answer. Supra pp. 4–5 [223 F.2d 615].

8. Miss Brownlow left the force the following year and did not recall details of her doings, but remembered going to the Tenth Precinct. "That was one of

the few times I had been there. * * * I am aware that there was this complaint and that I interviewed the complainant. I certainly recognized the statement that I took as my type of wording, and so forth."

riding by Catholic University," or "down near a railroad line," or "seized her by the throat" or to state whether during the relevant period he was working in Virginia with the husband of the prosecutrix. His attitude when "questioned also might have been regarded as corroborative to some extent." Ewing v. United States, supra, 77 U.S.App.D.C. at page 17, 135 F.2d at page 636. Other circumstances which need not be set forth also corroborated her testimony.

The charge as a whole was highly favorable to the accused. The jury saw and heard the witnesses, evaluated their testimony and found the appellant guilty. The accused exercised his own choice in taking the stand. Bruno v. United States, 1939, 308 U.S. 287, 294, 60 S.Ct. 198, 84 L.Ed. 257. We cannot say that the jury could not fairly conclude guilt beyond a reasonable doubt. Curley v. United States, 1947, 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied, 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850. We can say with fair assurance, after pondering all that happened, that if there be error, the judgment was not thereby substantially swayed and substantial rights were not affected. Kotteakos v. United States, 1946, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557. It therefore is our duty to affirm the conviction.

So ordered.

BAZELON, Circuit Judge (dissenting).

Appellant was indicted in October 1945 for an alleged rape in November 1944. He was not arrested until June 1953. The long delay is not explained. His trial took place nine years after the alleged offense. For reasons I will discuss, I think that the trial court committed plain error in failing to direct an acquittal.[1]

In a majority of American jurisdictions, as in England,[2] no evidence corroborating the prosecutrix' story is required for conviction, save where her story is inherently incredible or is rendered improbable by other evidence.[3] In other jurisdictions, however, including the District of Columbia, no person can be convicted on the prosecutrix' testimony alone.[4] The District's rule developed from our decision in Kidwell v. United States. We said:

"* * * We are aware that a conviction for this offense will be sustained upon the testimony of the injured party alone. But where the courts have so held, the circumstances surrounding the parties at the time were such as to point to the probable guilt of the accused, or, at least, corroborate indirectly the testimony of the prosecutrix." [5]

In the later case of Ewing v. United States, we held unequivocally that there "must be circumstances in proof which tend to support the prosecutrix' story * * *," noting that it was for lack of such corroborating evidence that "Kidwell's conviction for one offense was re-

1. Ordinarily, review of this issue is barred where, as here, the motion for acquittal was not renewed after the close of all the evidence. This principle, however, does "not restrain us from rectifying manifest error or serious injustice." Battle v. United States, 1953, 92 U.S.App.D.C. 220, 221, 206 F.2d 440, 441, and authorities cited, note 3. I think such matters are disclosed by this record.

2. 7 Wigmore § 2061 (3d ed. 1940).

3. See cases collected 7 Wigmore § 2061, n. 1, and 60 A.L.R. 1124 et seq.

4. Those jurisdictions are: Idaho (case law); Illinois (case law); Iowa (stat-ute); Nebraska (case law); New York (statute).

The rule stems from Lord Hale's famous dictum (I Pleas of the Crown 633, 635 (1680)):

"It is true, rape is a most detestable crime, and therefore ought severely and impartially to be punished with death; but it must be remembered that it is an accusation easily to be made and hard to be proved; and harder to be defended by the party accused, though never so innocent."

5. 1912, 38 App.D.C. 566, 573.

versed";[6] and we held that circumstantial, as well as direct, evidence would satisfy the corroboration requirement.[7]

In a majority of the American jurisdictions which follow the corroboration rule, corroboration is required on both the matter of the *corpus delicti* (penetration by force) and the matter of the identity of the accused.[8] Decisions of this court demonstrate—and my brethren do not say otherwise—that the rule has been so applied in this jurisdiction.[9] Those decisions also demonstrate the insufficiency of the corroboration in the instant case on both matters. The record, with but one exception, discloses none of the corroborative circumstances present on both matters in the Ewing case, supra, in the later case of McGuinn v. United States,[10] and in other cases sustaining rape convictions.

*The corpus delicti.* The prosecutrix testified that she made her complaint to the first police officer she saw. That officer did not testify, despite the obvious importance of his testimony, concerning her physical and nervous condition. She testified that he took her to the precinct station where she repeated her complaint to Detective Sergeant Howe. Howe did testify. Concerning her physical appearance he said only that there were "several mud stains" and "a number of twigs" on the back of her coat. *He was not asked about her nervous condition.* The prosecutrix testified that a policewoman took her to the Women's Bureau and later to a hospital "where they examined me and painted my legs and things where the bruises were." The policewoman, who testified, could not recall the prosecutrix or the circumstances under which the prosecutrix gave her a statement on the night in question. *No medical testimony or hospital records were produced in connection with the alleged hospital examination,* despite the glaringly apparent need for such corroboration. The Government made no attempt to explain the absence of evidence on any of these matters.[11]

6. 1942, 77 U.S.App.D.C. 14, 17, 135 F. 2d 633, 636, certiorari denied, 1943, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145.

7. Ibid. That circumstantial corroborative evidence satisfied the rule was reaffirmed in McGuinn v. United States, 1951, 89 U.S.App.D.C. 197, 191 F.2d 477.

8. *Iowa.* Iowa Code § 13900, I.C.A. § 782.4, provides that one " * * * cannot be convicted upon the testimony of the person injured, unless she be corroborated *by other evidence tending to connect the defendant with the commission of the offense.*" See State v. Lahmon, 1942, 231 Iowa 448, 1 N.W.2d 629, 630. *New York.* People v. Terwilliger, 1893, 74 Hun. 310, 26 N.Y.S. 674, affirmed on opinion below, 1894, 142 N.Y. 629, 37 N.E. 565. See also People v. Croes, 1941, 285 N.Y. 279, 34 N.E.2d 320; People v. Romano, 1939, 279 N.Y. 392, 18 N.E.2d 634; People v. Brehm, 1926, 218 App.Div. 266, 218 N.Y.S. 469. *Illinois.* People v. Grudecki, 1940, 373 Ill. 536, 27 N.E.2d 51. *Idaho.* State v. Mason, 1925, 41 Idaho 506, 239 P. 733; State v. Elsen, 1947, 68 Idaho 50, 187 P.2d 976. Contra: Noonan v. State, 1928, 117 Neb. 520, 221 N.W. 434, 60 A.L.R. 1118.

9. In Kelly v. United States, 1952, 90 U.S. App.D.C. 125, 127, 194 F.2d 150, 152, a case involving the crime of inviting to commit a perverted sexual act, we stated that in rape cases "the testimony of the prosecutrix must be corroborated by evidence *as to the circumstances surrounding the parties at the time.*" (Emphasis supplied.) While declining to impose "rigid requirements as to quantity or character of proof * * *" in that type of case, we counseled trial courts, *inter alia,* to "require corroboration of the circumstances surrounding the parties at the time, *such as presence at the alleged time and place * * *.*" 90 U.S.App. D.C. at pages 129–130, 194 F.2d at pages 154, 155, emphasis supplied. *A fortiori* such corroboration is required in rape cases, where we do have "rigid requirements as to quantity or character of proof * * *."

10. 1951, 89 U.S.App.D.C. 197, 191 F.2d 477.

11. Regarding the importance of the lack of evidence of nervous and physical condition following an alleged rape, see People v. O'Connor, 1952, 412 Ill. 304, 106 N.E.2d 176; People v. Trobiani, 1952, 412 Ill. 235, 106 N.E.2d 367; People v. Scott, 1950, 407 Ill. 301, 95 N.E.2d 315.

Except for the fairly prompt complaint, none of the ostensibly corroborating testimony tended to establish any more than that *something* had occurred at the time and place in question; but that it was rape, *i. e.*, penetration by force, depended entirely upon the complainant's own testimony. This was not so in the Ewing and McGuinn cases. In Ewing there was not only a prompt complaint but medical evidence that the prosecutrix had recently had intercourse for the first time and testimony by several witnesses that she appeared nervous and distraught on the following day; while in McGuinn, in addition to the prompt complaint, there was testimony that the complainant was "in a nervous and crying condition" and an admission of intercourse by the accused.

*Identity of the accused.* The answer to a leading question on direct examination of the prosecutrix provided the only testimony in the entire record linking appellant to the charged offense:

> "Q. Calling your attention specifically to the 28th day of November, 1944, and to the time of about 8:00 o'clock, 8:15, 8:30 of that day, I will ask you whether on that day and at that time you saw the defendant here present, Henry Walker? A. Yes, I did."

The prosecutrix admitted on cross-examination that she had never seen appellant before the night of the alleged crime and did not know his name at that time; and nothing in the record indicates she ever saw him again until the moment of trial, or that she had ever identified him in a police line-up, from pictures, or by any distinguishing physical features.

No other testimony or circumstance linked the appellant to the crime. The majority asserts that the prosecutrix' identification is corroborated by the fact that she rode on lighted streetcars with her assailant for thirty minutes and so

had a good opportunity to observe him. But testimony of the prosecutrix herself does not meet the requirement that her testimony be corroborated. There is not one iota of corroboration that such a streetcar ride took place. It is urged further that appellant's silence when asked certain incriminating questions provided corroboration on the issue of identity. Without deciding whether the mere silence of an obviously confused and ignorant defendant can ever be corroborative evidence, we note that on cross-examination appellant stated categorically that he had never seen the complainant before she got on the stand at the trial.

I have found no case in which this court has affirmed a rape conviction in the absence of substantial corroboration of identity. In Ewing there was testimony that the accused was known to the complainant, and that he lived in the same apartment and "spent the night [of the alleged attack] either in the living room or in a room across the hall * * " from the complainant. In McGuinn [89 U.S.App.D.C. 197, 191 F.2d 478] we noted that the accused was "found as described by the complaining witness in the front seat with his pants and shorts down." There has been comparable corroborative evidence of identity in other cases. For example, in Robinson v. United States: "In addition to the complaining witness' positive identification, there was much substantiating evidence both of identification and of the crime. Some of it was circumstantial. Some of it was in the form of testimony concerning damaging admissions previously made by defendant." [12] In Brown v. United States, where "the only question was one of identification," a companion of the victim at the time of the assault identified the accused at the trial. We held the case was properly submitted to the jury since "there was positive testimony identifying [the accused] as the assailant." [13]

12. 1942, 76 U.S.App.D.C. 29, 30, 128 F.2d 322, 323.

13. 1938, 69 App.D.C. 96, 97–98, 99 F.2d 131, 132; cf. McKenzie v. United States, 1942, 75 U.S.App.D.C. 270, 126 F.2d 533.

The court, citing Curley v. United States,[14] says, "We cannot say that the jury could not fairly conclude guilt beyond a reasonable doubt." But even if the evidence would have been sufficient under the Curley rule, in a case not involving rape, the plain meaning of our corroboration rule in rape cases is that there must be an acquittal as a matter of law where, as here, the prosecution fails to produce the required direct or circumstantial corroborative evidence.

---

14. 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied, 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.