### UNITED STATES of America
v.
### Mack J. BRYANT, Appellant.
### No. 22511.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 26, 1969.

Decided Dec. 11, 1969.

Mr. Paul J. Mode, Jr., Washington, D. C. (appointed by this court) for appellant.

Mr. Sandor Frankel, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., Roger E. Zuckerman and Nicholas S. Nunzio, Asst. U. S. Attys., were on the brief, for appellee. Mr. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellee.

Before WRIGHT, LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge.

In this case we hold that appellant's conviction for assault with intent to commit rape (in violation of D.C.Code § 22–501) must be reversed because the trial judge failed to instruct the jury on the need for corroboration of the testimony of the victim on the elements of the sex offense. However, both the evidence and the findings of the jury plainly support a conviction for assault, and in the interest of justice we do not require a new trial but remand to the dis-

trict court to determine, after hearing from counsel, whether to enter judgment and sentence for assault or to order a new trial. In the event of new trial, the judge should provide clarification of the instructions in other respects as set forth in the opinion.

## I. THE EVIDENCE, AND THE CORROBORATION OF COMPLAINANT'S TESTIMONY, WAS SUFFICIENT TO GO TO THE JURY.

The chief witnesses at trial were the complainant and the appellant, who told substantially different versions of the incidents surrounding the alleged assault with intent to rape.

### A. *The Complainant's Testimony*

Complainant testified that on April 24, 1968, she was in her second-floor apartment in northeast Washington, when appellant, the brother of her next-door neighbor, whom she had previously met only casually, knocked on the door, began a conversation, and asked for a drink of water. She allowed him in, gave him the water, refused the offer of one of the two beers he had in a paper bag, and left the living room to tend to her napping child. As she was returning from the child's room, appellant met her in the corridor between the bedroom and living room, put his arm around her, and told her in unmistakable street language that he wanted to have sexual intercourse with her. Appellant then tugged at her—"he just kept tugging at me"—until the two fell to the floor. After a brief struggle, complainant broke free and ran toward the front door. Appellant caught up with her in the living room and grabbed at her, tearing the strap of her dress off her shoulder just as she reached the door and fled from the apartment. She screamed for help and no one came to her assistance. Appellant left her apartment and she ran back inside, closing the self-locking door as she entered. She went to the kitchen, but returned when she heard someone "jiggling" the handle. A look through the peephole revealed that it

was appellant, and she secured another lock on the door. She then called the police, and while waiting for their arrival five minutes later, she ironed and changed into a fresh dress.

When the police arrived they saw appellant at the foot of the basement stairway and brought him up to complainant's apartment where she identified him as "the man that tried to rape me."

### B. Appellant's Testimony

Appellant gave quite a different account. He testified that he had been in complainant's apartment on three or four previous occasions, "smooching," and had once convinced complainant to go with him to a tourist home to have sexual relations, though she ultimately refused because she was afraid that her fiance would find out.

On the day in question he stopped at her apartment with six cans of beer in a paper sack. The two sat down in her living room and began drinking the beer. She told him they could be friends if he would just stop drinking and "straighten up." When he objected to her demand an argument began and there was some name-calling. The argument lasted 15 to 20 minutes and she became emotionally upset. Finally she said she was going to quit appellant because he would not "straighten up," because she was pregnant, and because she was afraid that her fiance would find out about their relationship. She asked appellant to leave and he did so immediately, going to a nearby corner to catch a cab. Unable to find one, he returned and knocked on his sister's door. Hearing no answer, he went back downstairs and encountered the police as he was leaving and they were entering the building.

### C. The Sufficiency of the Evidence and of the Corroboration of Complainant's Testimony.

Appellant argues both that the evidence was insufficient to warrant submission of the case to the jury, and that there was lacking the corroboration of her testimony required by law.

■ There are weak points in complainant's testimony; for example, the fact that no one heard her screaming for help outside her apartment immediately after the alleged assault. But her testimony, in combination with the other evidence, was sufficient to support a conviction for assault with intent to commit rape. Two policemen testified that the complainant had bruises, which she showed them, when they arrived on the scene, and one indicated that she was shaking. They also testified that appellant was coming up the stairs from the basement of the apartment house when they arrived, and one officer indicated that appellant turned around and started back down the stairs when he saw the officer. This conflicted with appellant's testimony that he was at the door and about to leave the building when the police arrived.

■ We turn to the related but distinct issue of whether the evidence shows requisite corroboration of complainant's testimony. It is the law of this jurisdiction, settled by a long line of cases, that corroboration of the complainant's testimony is necessary for each element of a sex offense.[1] Of

---

1. Coltrane v. United States, 135 U.S.App. D.C. 295, 418 F.2d 1131 (May 23, 1969); Allison v. United States, 133 U.S.App. D.C. 159, at 162, 409 F.2d 445, at 448, (Feb. 17, 1969); Bailey v. United States, 132 U.S.App.D.C. 82, 87, 405 F.2d 1352, 1357 (1968); Borum v. United States, 133 U.S.App.D.C. 147, 152, 409 F.2d 433, 438 (1967), cert. denied, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); Calhoun v. United States, 130 U.S.App. D.C. 266, 399 F.2d 999 (1968); Thomas v. United States, 128 U.S.App.D.C. 233, 234, 387 F.2d 191, 192 (1967); Franklin v. United States, 117 U.S.App.D.C. 331, 334–335, 330 F.2d 205, 208–209 (1963); Roberts v. United States, 109 U.S.App. D.C. 75, 77, 284 F.2d 209, 211 (1960), cert. denied 368 U.S. 863, 82 S.Ct. 109, 7 L.Ed.2d 60 (1961); Wilson v. United States, 106 U.S.App.D.C. 226, 227, 271 F.2d 492, 493 (1959); Walker v. United States, 96 U.S.App.D.C. 148, 152, 223 F.2d 613, 617 (1955); Miller v. United

course corroboration need not be by the eyewitness testimony of another, but may be by evidence, real or testimonial, of circumstances that tend to support the complainant's account.

In our most recent comment, earlier this year, we noted that corroboration was required "for the cogent reason that the risk of unjust conviction is high. * * * Typically the innocent, as well as the guilty, have only their own testimony on which to rely." [2] The need for corroboration as an essential feature of these cases, pervades this branch of jurisprudence, and is an elemental requirement widely understood by courts and counsel. It is "hornbook law" in this jurisdiction.

We conclude that the dress with the torn shoulder strap offers enough independent corroboration of complainant's account to avoid the requirement that a verdict be directed for the accused.[3] We also take note of the reasonably prompt complaint to the police, the bruises and complainant's shaking. The issue is not entirely free from doubt. The evidence is more clear as a corroboration that there was an assault which frightened the victim than as a corroboration of the defendant's intent to achieve a penetration by force, if necessary, to overcome the continuing resistance of the victim. Although the corroborative evidence is marginal, we think it suffices for purposes of the doctrine requiring corroborative evidence.

## II. LACK OF INSTRUCTIONS ON NEED FOR CORROBORATION ON THE ELEMENTS OF THE OFFENSE.

The corroboration doctrines in this jurisdiction require not only the existence of evidence sufficient to avoid a directed verdict, but also that the case be sent to the jury with instructions making clear that a guilty verdict may not be based solely on complainant's testimony, even assuming that her account and demeanor appear convincing. The jury must also be told that corroboration of the complainant's testimony is essential, and that it is their responsibility as jurors to determine whether evidence which they credit establishes such corroboration. Borum v. United States, 133 U.S.App.D.C. 147, 151–153, 409 F.2d 433, 437–439 (1967), cert. denied, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969).

The rule is thus similar to that in perjury cases. In Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945), the Supreme Court held that in perjury cases the judge must instruct the jury on the need for finding corroboration of the witness.[4] It rejected the Government argument that the existence of corroboration *vel non* is a matter for the court and ruled that the function of determining the credibility of the corroboration "belongs exclusively to the jury. * * * [T]o permit the judge finally to pass upon this question would

States, 93 U.S.App.D.C. 76, 78, 207 F. 2d 33, 35 (1953) ; Kelly v. United States, 90 U.S.App.D.C. 125, 129–130, 194 F.2d 150, 154–155 (1952) ; McGuinn v. United States, 89 U.S.App.D.C. 197, 198 191 F.2d 477, 478 (1951) ; Ewing v. United States, 77 U.S.App.D.C. 14, 16–17, 135 F.2d 633, 635–636 (1942), cert. denied 318 U.S. 776, 63 S.Ct. 829, 87 L. Ed. 1145 (1943) ; Kidwell v. United States, 38 App.D.C. 566, 573 (1912). See also Hughes v. United States, 113 U.S. App.D.C. 127, 129, 306 F.2d 287, 289 (1962) ; Lyles v. United States, 20 App. D.C. 559 (1902).

2. Coltrane v. United States, *supra* note 1, 135 U.S.App.D.C. at 296, 418 F.2d at 1132.

3. Corroborative evidence may be so weak that it is insufficient. Borum v. United States, *supra* note 1, 133 U.S.App.D.C. at 152, 409 F.2d at 438; *Coltrane, supra* note 1, 135 U.S.App.D.C. at 296, 418 F.2d at 1132. While the corroboration in the present case is not strong as that upheld in *Borum*, it is stronger than that rejected in *Coltrane*.

4. In the *Weiler* case the instruction was requested at trial, and the Court had no occasion to rule on whether the omission in the absence of request would have been reversible as plain error. *See* note 8 *infra* and accompanying text.

enable a jury to convict on the evidence of a single witness, even though it believed, contrary to the belief of the trial judge, that the corroborative testimony was wholly untrustworthy." (323 U.S. at 610, 65 S.Ct. at 550–51.)

In this case the instructions are lacking in any hint to the jury, much less "proper and adequate guidance," concerning the need for the jury to ascertain, and to credit, independent corroborative evidence over and above any belief in the complainant's testimony based on her courtroom demeanor.

The Government in effect concedes the mistake, but urges that the failure to provide an instruction on corroboration was not reversible error because no request was made for such an instruction. In cases involving the issue of corroboration of identity this court has held that the existence of corroborative evidence avoids reversal when no corroboration instruction has been requested. Franklin v. United States, 117 U.S.App. D.C. 331, 330 F.2d 205 (1963); United States v. Dews, 135 U.S.App.D.C. 185, 417 F.2d 753 (April 1, 1969). However a different result obtains when the question is one of corroboration of the elements of the crime. The two issues differ markedly in importance.[5] The *Franklin* opinion expressly noted that "the danger of an erroneous identification in a rape case is not of the same magnitude as the danger of a fabricated rape."[6]

Ordinarily in criminal cases an instruction on corroboration relates to what is purely an evidentiary matter, as in the familiar instruction that the uncorroborated testimony of an accomplice is to be viewed with suspicion. In this field of sex offenses, the requirement of corroboration is fairly taken as an essential ingredient of the case, widely understood by judges and lawyers,[7] and, at least where the corroborative evidence is marginal, a case lacking instructions on the need for corroboration calls for application of the rule that mandates a trial judge to include in his charge an instruction concerning every element of the crime whether or not defense counsel has made a specific request therefor. Liles v. United States, 129 U.S.App.D.C. 268, 393 F.2d 669 (1967); Byrd v. United States, 119 U. S.App.D.C. 360, 342 F.2d 939 (1965); McDonald v. United States, 109 U.S. App.D.C. 98, 284 F.2d 232 (1960); Mullen v. United States, 105 U.S.App.D.C. 25, 263 F.2d 275 (1958); Williams v. United States, 76 U.S.App.D.C. 299, 131 F.2d 21 (1942).

Since the independent corroboration evidence is minimal rather than strong, we conclude that the plain error in failing to instruct the jury on its responsibility to determine whether there was corroborative evidence, which it credited, of all the elements of this sex offense, is prejudicial, and requires reversal.[8]

---

5. Coltrane v. United States, *supra* note 1, 135 U.S.App.D.C. at 296, 418 F.2d at 1132; Allison v. United States, *supra* note 1, 133 U.S.App.D.C. at 163, 409 F.2d at 449.

6. 117 U.S.App.D.C. at 334, 330 F.2d 208.

7. We note that the "Red Book" of jury instructions published by the Junior Bar Section of the Bar Association of the District of Columbia, contains a cross-reference to the "corroboration" instruction immediately following the form of instruction on assault with intent to commit rape used by the trial judge. *See* Criminal Jury Instructions for the Dis-

trict of Columbia (1966), Instruction No. 59.

8. Where the evidence of corroboration is strong, it may be clear that if the jury believed complainant, it must plainly have reached the verdict on the basis of the corroborative evidence.

In both *Franklin* and *Dews* the corroboration found by the court appears to have been strong. In *Dews* the appellant did not even allege the absence or weakness of corroborative evidence; he alleged merely the failure to instruct on the point. In *Franklin* the appellants, whose failure-to-instruct claims were rejected, had been identified by an eye witness.

## III. INSTRUCTION ON INTENT TO USE FORCE

Apart from his attack on the sufficiency of the evidence of intent, appellant also contends that the instructions used but failed to define the term "specific intent," and were deficient in their definition of the intent necessary for conviction for assault with intent to commit rape.

In words almost identical with Form 102 in what is commonly called the "Red Book" of Criminal Jury Instructions, issued in a red binder by the Junior Bar Section of the District of Columbia Bar Association, the trial judge gave the following charge on the elements of the crime:

The essential elements of the charge of assault with intent to commit rape, a violation of Title 22 of the District of Columbia Code, Section 501, are as follows, and each of these elements the Government must prove beyond a reasonable doubt:

First: That the defendant made an assault upon the complainant.

Second: That he did so with specific intent to have sexual intercourse with the complainant; and

Three: That he did so with the purpose to carry this intent into effect by force and against the will of the complainant.

### A

Appellant contends that a charge using the term "specific intent" is fatally defective if it does not give the jury the conventional guidance both on the definition of that term,[9] and concerning the methods of proof of intent.

██ We think the phrase "specific intent to have sexual intercourse" was sufficiently meaningful to the jury to avoid condemnation as plain error. Obviously the term without the word "specific" is clear enough. And the addition of "specific" connotes a requirement of definiteness of intention which is the essence of the matter. If a retrial is held, court and counsel can doubtless implement or supplement this instruction.[10]

9. Instruction 42 in the Red Book charge, Criminal Jury Instructions, *supra* note 7, provides:

Intent means that a person had the purpose to do a thing; it means that he made an act of the will to do the thing; it means that the thing was done consciously and voluntarily and not inadvertently or accidentally.

Some criminal offenses require only a general intent. Where this is so, and it is shown that a person has knowingly committed an act which the law makes a crime, intent may be inferred from the doing of the act.

Other offenses require a specific intent. Specific intent requires more than a mere general intent to engage in certain conduct or to do certain acts. A person who knowingly does an act which the law forbids, intending with bad purpose either to disobey or disregard the law, may be found to act with specific intent.

10. While the "specific intent" charge of Instruction 42 (*supra* note 9) would avoid any possible defense objection, we note specifically that we are not ruling that the defendant would be entitled to that

portion of the charges which requires a "purpose to disobey or disregard the law." Similar wording is contained in the Seventh Circuit's Manual on Jury Instructions—Criminal, § 4.04, 33 F.R.D. 523, 550 (1963). But the supporting citations show that it is drawn from cases involving crimes where the intent to break the law may be critical—e. g., a tax evasion case, where fraud is at issue, *see* Elwert v. United States, 231 F.2d 928 (9th Cir. 1956), or a case involving unlawful conversion of Government property, where the defendant claims that he thought the property involved had been abandoned, *see* Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

Generally, in cases of attempt or assault with intent to commit a substantive crime, the required specific intent is simply "an intent to commit a specific crime," 1 Wharton's Criminal Law § 73 (12th ed. 1967). As for the specific intent in assault with intent to commit rape, "the man's purpose must be to use force, should it be necessary, to overcome the woman's will." 1 Bishop's Criminal Law § 731.5 (9th ed. 1923). Few if any cases of attempted rape will turn not

**1334**

### B

A more important aspect in which the instruction would warrant clarification on retrial relates to the extent of intended force necessary for conviction. It is elementary that unless there is an element of intended force, an assault with intent to have sexual intercourse is not an assault with intent to commit rape. Baber v. United States, 116 U.S.App.D.C. 358, 324 F.2d 390 (1963) (conviction reversed though defendant tore skirt of complainant).

In a rape case the prosecution must establish the fact of sexual intercourse (that is, penetration of the female sexual organ by the sexual organ of the male) forcibly and against the will of the complainant.[11] While the rape instruction clearly requires force (or threats) at the time of penetration, the form instruction for assault with intent to commit rape may result in conviction because the jury finds that the defendant intended to have sexual intercourse and to use some force (against the will of the complainant) at some point *on the way* to accomplishing his goal.

A man who handles a lady vigorously and with some force (against her will) is plainly guilty of an assault —of an indecent assault. But he does not have an intent to commit rape if his actions are taken in the hope or expectation of thereby awakening desire, and with the further intention of desisting if his approach does not arouse desire or lead to acquiescence but rather encounters continued resistance.

When a defendant intends to use the kind of "force" that is enough in his mind to test the existence or persistence of complainant's true intentions, but not enough to achieve sexual intercourse if she "really" rejects him, there

is no intent to commit rape. However, it might be concluded by the jury that such an intent satisfies the language of the form instruction on assault with intent to commit rape (*supra*)—that he had "the purpose to carry this intent [intercourse] into effect by force and against the will of the complainant"— because he did have the intent of intercourse and the purpose to use force—at first—to carry into effect the ultimate intent of intercourse.

For accurate definition of the crime the form instruction used in the Red Book should be supplemented with the additional language, used in Wharton's text[12] and quoted with approval by this court, in Hammond v. United States, 75 U.S.App.D.C. 397, 398, 127 F.2d 752, 753 (1942): "There must be an intent to use such force and violence as may be necessary to overcome resistance."

Rulings on the issue under discussion appear in opinions of the state courts. They make it clear that the use of force or intent to use force is not enough for assault with intent to rape, if there is no intent to use force at the time of sexual intercourse. For example, Dannelley v. State, 80 Fla. 773, 87 So. 44 (1920), involved the use of force. The defendant grabbed the girl and wouldn't let her leave the car—and this on more than one occasion. Yet the court said at 46 of 87 So.:

> The testimony of the prosecutrix in this case shows that a highly indecent series of assaults were made by the defendant upon her, but it does not make out the necessary intent * * *. It tends rather to show that his intent was to obtain her consent to his intercourse, and that when he became convinced that he could not obtain such consent he voluntarily desisted, without any outside interference, and

only on intent to do the act, but also on questions of law, and existence of intent to break the law.

11. McGuinn v. United States, 89 U.S.App. D.C. 197, 191 F.2d 477 (1951); Ewing v.

United States, 77 U.S.App.D.C. 14, 135 F.2d 633 (1942).

12. Wharton's Criminal Law § 748 (12th Ed.1932).

without unusual resistance upon her part.

The Supreme Court of Illinois, in People v. Cieslak, 319 Ill. 221, 224, 149 N.E. 815, 816 (1925) stated that in a prosecution for assault with intent to rape,

> [t]he proof of a mere assault and battery, however aggravated it may be, without the intent to rape, will not warrant a conviction of assault with intent to rape, nor will the proof of mere licentious conduct, or even *violent familiarity*, with the female in an effort to induce her to yield to the embraces of the assailant, where there is no proof that he intended to have carnal knowledge of her by force and against her will. [Emphasis added.]

The theme is recurrent. The Criminal Court of Appeals of Oklahoma has used almost the same words and added that the appellant must have intended sexual intercourse with the complainant "notwithstanding any resistance she might make." Cape v. State, 61 Okl.Cr. 173, 66 P.2d 959, 960 (1937) (syllabus by the court). And as already noted the same point is made in Wharton's text (text accompanying note 12).[13]

There is more than an academic possibility that a man who would be dissuaded by a woman's genuine, continuing resistance desires to test the genuineness and persistence of her initial resistance by some initial force, by some "violent familiarity," as the Illinois court put it. The issue may be of particular significance when the parties are acquaintances or when the circumstances and surroundings otherwise suggest to him a reasonable chance of obtaining her ultimate consent.[14]

Appellant claims he and the complainant had previously engaged in "smooching" and that she had once consented to an assignation with him in a tourist home, though she later changed her mind. The jury was entitled not to believe this portion of appellant's testimony. But he was equally entitled to an instruction that would focus the issue for the jury in its appraisal of appellant's defense.[15]

For purposes of guidance at retrial, if held, we have appended a proposed instruction which adds appropriate language to the outstanding "Red Book" form.[16]

## IV

Assault is a lesser included offense under assault with intent to commit rape. The trial judge correctly instructed the jury on the elements of assault. The evidence is of course sufficient to sustain a conviction and judgment of assault. We think it in the interest of justice to avoid an automatic requirement of new trial because of the error in the charge on the greater of-

---

13. Except for Wharton's text, the point has not emerged as clearly in the treatises as in the cases.

   Bishop does state: "A series of highly indecent assaults with intent merely of obtaining the consent of the prosecutrix is not sufficient." 2 J. Bishop, A Treatise on Criminal Law § 1136a (1923). He cites Dannelley v. State, *supra.*

14. *Compare* Jackson v. State, 91 Ga. 322, 18 S.E. 132, 133 (1893): "Not the faintest trace of a reason appears on which [appellant, accused of assault with intent to rape] could have founded any hope or expectation of consent."

15. We are aware that the form instruction contains the final phrase "and against the will of the complainant." This would negative consent to intercourse, but the elements of the crime include "the necessary want of consent and use of force and [or?] threats to overcome the girl's resistance." Ewing v. United States, *supra* note 1, 77 U.S.App.D.C. at 16, 135 F.2d at 635. The instruction in the appendix hereto focuses on the need for an intent to overcome continuing resistance, even though the law no longer requires "last-ditch resistance" to the victim's ultimate physical powers." Ewing v. United States, *supra.* A specific reference to this element of the crime is appropriate, especially in view of the substantial (15-year) punishment provided. D.C.Code § 22–501.

16. It may be that a defendant may properly present additional wording to focus on the application of the law to the particular fact situation.

fense. We remand to the District Court with instructions either to grant a new trial, or if the prosecutor consents and the court considers it in the interest of justice, to enter a judgment of assault. See Austin v. United States, 127 U.S. App.D.C. 180, 193–194, 382 F.2d 129, 142–143 (1967).[17]

Reversed and remanded.

### Suggested Instruction

The essential elements of the offense of assault with intent to commit rape, each of which the Government must prove beyond a reasonable doubt, are:

(1) that the defendant made an assault upon the complainant; and

(2) that he did so with specific intent to have intercourse with the complainant; and

(3) that he intended to achieve penetration of the complainant's sexual organs against her will and by using such force or threat of force as might be necessary to overcome resistance or make further resistance useless.

17. Because the present case, unlike the *Austin* case, involves no determination that the Government's evidence was insufficient to sustain judgment on the greater offense, no sound reason appears for denying the prosecution the right, if it insists, to retry the defendant for the greater offense.