**UNITED STATES of America**

v.

**Edward L. HUFF, Appellant.**

**No. 22793.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 19, 1970.

Decided March 8, 1971.

Petition for Reconsideration Decided
March 29, 1971.

MacKinnon, Circuit Judge, dissented in part and filed opinion.

Mr. Allan Palmer, Washington, D. C. (appointed by this Court) for appellant.

Mr. John O'B. Clarke, Jr., Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before LEVENTHAL, ROBINSON and MacKINNON, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from a judgment entered on conviction of second degree burglary and assault with intent to commit rape, sentencing appellant to imprisonment for concurrent terms of from three to ten years on each of these offenses. Rejecting various contentions of appellant, we hold (1) that there was sufficient corroborative evidence to warrant submission to the jury of the charges of rape and assault with intent to commit rape, (2) that there was no plain error affecting substantial rights in the trial court's instruction regarding evidence of a prior sexual assault by defendant on complainant and (3) that the impeachment of two defense witnesses did not constitute plain error. However, the failure to permit the jury to consider the lesser-included offense of assault requires a remand, for either a new trial or a resentencing on the basis of simple assault.

*Testimony*

The Government's evidence showed that at about 11:40 p. m. on Saturday, February 17, 1968, complainant Mrs. Trivella M. Harrington, who lived with her common-law husband and their six-month-old child at 121 Galveston Place, S.W., left the child with a baby-sitter and went to buy cigarettes at a nearby liquor store. Her husband was visiting at his mother's house. Returning from the store, Mrs. Harrington met a young man by the name of Tommy Branch who informed her that a party was in progress in an upstairs apartment at 109 Galveston.

Mrs. Harrington visited the party for about ten minutes, then returned home,

where she put the baby to bed and waited for her to fall asleep. She then changed into slacks and left again for the party.

As she was entering the apartment house at 109 Galveston, Mrs. Harrington met an acquaintance of hers by the name of "Junior" Askew, and had a brief conversation with him. She entered the hallway of the apartment house, and as she turned to go up the stairs to the apartment she had just visited, she saw appellant coming down the same stairwell. When appellant reached the bottom, he grabbed Mrs. Harrington, and when she began to scream for help, placed his hand over her mouth and knocked her down, causing her to strike a nearby milk box. He then began to choke her and she lost consciousness. The next thing she knew she was still lying in the hallway, and appellant was bent over her trying to insert his penis in her mouth. She passed out once more, and this time woke up in a strange apartment. Appellant was on top of Mrs. Harrington, and it felt to her as though he was having intercourse with her. (Tr. 17). When she finally regained consciousness, and was able to get up, she noticed that her girdle, slacks and pettipants were down between her knees and ankles. She managed to climb the stairs to Apartment 4, where the party was going on, knocked on the door, and collapsed crying when someone answered it.

The police arrived about ten minutes later, and when Mrs. Harrington told them that the apartment where the rape had occurred was probably Number 1, they examined that apartment, and found her missing shoe in one of the corners. Although the apartment was occupied, the tenants were not at home that night. The furniture in the apartment had been moved about, and the coffee table had been moved from the center of the floor. The police also found signs that the door to this apartment had been forced open either by kicking or by using a shoulder. Mrs. Harring-

ton was then taken to D.C. General Hospital for examination, but the physician was unable to determine if there had been penetration. Tests for the presence of sperm on the clothing and the vaginal area were negative, and an examination of Mrs. Harrington's clothes revealed that they were not torn or ripped. But there was a bump on her forehead where she had struck the milk box.

Appellant was charged on April 15, 1968, with second-degree burglary (22 D.C. Code § 1801(b)), rape (22 D.C. Code § 2801), and sodomy (22 D.C. Code § 3502). At the close of the Government's case the sodomy charge was dismissed on motion for lack of corroboration.

There was a defense of alibi supported by the testimony of defendant's fiancee that he was with her that night. Also, Askew testified he was not near 109 Galveston Place as testified by complainant.

The judge instructed the jury on rape, as charged in count 2, and at the prosecutor's request, on assault with intent to commit rape as a lesser-included offense. On count 1, he charged on burglary, and on unlawful entry as a lesser-included offense, this to be available however only in the event defendant was not convicted of rape or assault with intent to commit rape. The jury retired at 12:25 p.m. to begin deliberations. Next day, at 11:30 they reported an inability to reach a verdict and were given an Allen-type charge.[1] After retiring again, the jury sent a second note requesting whether defendant could "be charged with the crime of assault with attempt [sic] to rape and unlawful entry." They were re-instructed as to their alternatives and retired again. The jury returned with verdicts of guilty of burglary, not guilty of rape, but guilty of assault with intent to commit rape.

*Sufficiency of Evidence Corroborating Rape Charge*

■ Appellant first contends that the corroborative evidence was insufficient

1.  Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

to warrant submission to the jury of the charges of rape and assault with intent to commit rape. These sex charges may not be presented to the jury solely on the testimony of the victim, in the absence of corroboration of the crime. United States v. Jenkins, 140 U.S.App. D.C. 392, 436 F.2d 140 (Aug. 12, 1970); Carter v. United States, 138 U.S.App.D. C. 349, 427 F.2d 619 (1970); United States v. Bryant, 137 U.S.App.D.C. 124, 420 F.2d 1327 (1969); Kidwell v. United States, 38 App.D.C. 566 (1912). The degree of corroboration required varies with the case, dependent in large part upon the "danger of falsification" by a particular complainant. Thomas v. United States, 128 U.S.App.D.C. 233, 234, 387 F.2d 191, 192 (1967). Appellant says that in this case Mrs. Harrington had a "very real motive to fabricate a sexual attack upon her or, at the very least to honestly turn a simple assault into a sexually grounded one." (Appellant's brief at 15). Appellant lays a predicate for this assertion of motive in the testimony of Mrs. Harrington, elicited on cross-examination by defense counsel, that two years prior to the incident she had accused appellant of raping her at her home. She testified she had discussed this with Mr. Harrington but never made a report to the police.

■ While possibility of a motive to fabricate may exist, we think there was sufficient corroboration of the complainant's testimony to warrant submission of the sex charge to the jury. There was corroboration in the bump on her forehead, pointed out by her at trial, tending to corroborate her testimony that appellant had knocked her down in the hallway, and that she had struck her head on a nearby milk box. In corroboration of her testimony that she was raped in a strange apartment are the facts, established independently of her testimony, that the door to this apartment had been forced open, that the furniture had been disarranged, and that Mrs. Harrington's shoe was found in a corner. And there was corroborative evidence in the testimony of the lady who lived in the upstairs apartment, that when Mrs. Harrington got there, her clothes were in disarray. She was crying hysterically even when the police arrived, about an hour after the attack.

*Instruction Regarding Evidence of Prior Sexual Assault by Defendant on Complainant*

■ Appellant also assigns error to the instruction given the jury with respect to the prior alleged rape of Mrs. Harrington by appellant. As already noted this incident, which allegedly occurred in 1966, was brought out by defendant's counsel, while cross-examining Mrs. Harrington, to impeach her credibility by demonstrating her hostility toward appellant. However, in charging the jury, the trial judge stated that evidence of the prior rape was to be used, if at all, "solely for your consideration whether it tends to show a predisposition on the part of the defendant to gratify his sexual desires with the complainant."

Appellant's contention is that the evidence was not admissible because of its tendency to show criminal propensity, that it was admissible, and was introduced, solely for another purpose, to impeach the complainant for hostility to appellant, and that the judge made a compound error in improperly putting the evidence to the jury for consideration on the issue of criminal propensity, and improperly preventing the jury from considering it on the issue of bias, for which it was admissible.

There are difficulties with the charge, but we do not think they are grounds for reversal in view of the failure of defense trial counsel to object to the charge as given.

Under the circumstances we cannot hold that it was error to permit the jury to consider the evidence of the prior crime as bearing on a predisposition of defendant to gratify his sexual desires. The jury was instructed they could not otherwise consider it as tending to show defendant's guilt of the offense with which he was charged. Thus the charge as given did not go so far as to permit

the jury to infer a disposition to commit rape, to gratify sexual drives over the resistance of the woman involved.

██ While evidence is generally not admissible to show criminal character or disposition, that is not due to lack of materiality but to the conclusion that the materiality that exists is outweighed by the prejudice. However, there are exceptions. "Evidence disclosing another crime is admissible in situations where 'the prejudicial effect may be outweighed by the probative value.'" Bradley v. United States, 140 U.S.App. D.C. 7, 433 F.2d 1113, 1118 (1969). These exceptions apply where evidence of other crimes is relevant, e. g., to motive, intent, identity. Drew v. United States, 118 U.S.App.D.C. 11, 16, 331 F. 2d 85, 90 (1964). An exception has been carved out along the line that "in trials for sexual offenses, evidence of similar prior acts between the same parties is admissible as showing a disposition to commit the act charged." Miller v. United States, 93 U.S.App.D.C. 76, 77, 207 F.2d 33, 34 (1953); see also Bracey v. United States, 79 U.S.App.D.C. 23, 26, 142 F.2d 85, 88, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944).

Appellant points out that these are cases of intercourse (incest; with children) that did not involve force. But the judge's instruction did not permit the jury to infer a tendency to use force. When one considers also that the general rule is one designed to keep out evidence, albeit material, because it is prejudicial to defendant, and that here defendant introduced the evidence, we feel confident in declining to entertain a claim of plain error affecting substantial rights.

We turn to appellant's argument that the use of the word "solely" improperly prevented the jury from considering the evidence for the purpose for which it was originally introduced—i. e., to show complainant's bias from hostility toward appellant. Our reading of the record leads us to conclude that the word "solely" was used by the judge, not in disregard of appellant's rights, but because of a scrupulous concern on the part of the trial judge that the jury should not consider the prior incident as evidence of the criminal act for which appellant was on trial, but only as evidence of his state of mind. In the absence of any objection by counsel which might focus the attention of the judge on the possibility that his caution might operate to prevent consideration of the evidence as showing bias of complainant, we see no warrant for reversal.

*Failure To Include Instruction on Simple Assault*

██ Appellant next claims error in that the trial judge failed to charge the jury on simple assault as a lesser offense included under the rape count of the indictment. The Government argues that no request was made to the trial judge to charge on a simple assault and that the case is not appropriate for invoking the "plain error" rule for points not raised at trial. We are satisfied that the point was raised at trial with sufficient clarity, that the trial judge expressly determined that the assault instruction was not properly available, and that this was error.

In context the request for a charge on a lesser offense began with the prosecutor, who sought a charge on assault with intent to commit rape because the jury might conclude, "Maybe [Mrs. Harrington] imagined the penetration aspect while not imagining that he was indeed on top of her." (Tr. 198). Defense counsel objected to the inclusion of this lesser charge, obviously preferring—and with good reason—to go to the jury solely on the rape charge. She went on to express her view that if any instruction was to be given on a lesser offense, it should be for simple assault.[2] Al-

---

2. "I would see ample justification for Mr. Lippe's argument on simple assault as a lesser included offense, Your Honor. But I am a little at a loss to follow his reasoning on the assault with intent, because either she imagined it or she didn't imagine it. If she imagined it, he didn't do it." (Tr. 199.)

though less than a model of clarity, we think the statement of defense counsel constituted a request either that the trial court instruct solely as to rape, or that if any instruction be given on a lesser offense there be an instruction on simple assault. This was understood by the judge, who ruled, after hearing argument from both counsel: "I will give the assault with intent to commit rape as a lesser included offense. I don't think I can give simple assault." (Tr. 201.)

■ There was ample evidence from which a jury might reasonably and logically infer that appellant should be acquitted of both rape and assault with intent to commit rape yet at the same time be convicted of simple assault. See United States v. Comer, 137 U.S.App.D.C. 214, 421 F.2d 1149 (1970). Just as the jury could infer that Mrs. Harrington might have imagined penetration, as the prosecutor pointed out, so could it conclude that appellant, while striking and pushing Mrs. Harrington, had not carried the assault to the point of intent to rape.

The jury is not confined in its findings to matters that are directly set forth in testimony but may base an inference of lesser offense on a "reconstruction that is fairly inferable" from the evidence, gleaned perhaps by putting together some items from one witness, some from another, and some from the jury's own experience and sense of probabilities. Belton v. United States, 127 U.S.App.D.C. 201, 382 F.2d 150 (1967). This indeed was taken into account by the trial judge when he observed, in deciding to charge unlawful entry as a lesser offense under burglary, "I think the jury can say, 'Well, this woman was out for a little fun wherever she could get it.'" And so the judge took into account that the jury might reasonably make findings different from the version set forth in anyone's testimony, that the defendant and victim entered by agreement, or that there was assault without penetration (and that the penetration might have been "imagined" by complainant). But the judge failed to

take into account that the jury might likewise have made another intermediate determination—namely that the defendant did assault Mrs. Harrington, but did so without intending to rape her.

■ Assault with intent to rape is established by a use of and intent to use some physical force for the purpose of achieving sexual gratification, but requires an intent to persist in such force even in the face of and for the purpose of overcoming the victim's resistance. United States v. Bryant, 137 U.S.App. D.C. 124, 420 F.2d 1327 (1969). The point is neither obscure, nor was it outside the judge's understanding as appears from his instruction with respect to evidence of appellant's alleged assault on Mrs. Harrington two years earlier, discussed above. The court charged that this was evidence from which the jury was permitted to infer a desire of defendant to gratify sexual desires with complainant without inferring from the same evidence that appellant intended to overcome any and all resistance to his advances. It was open to the jury to find defendant had the intent to use some force to achieve acquiescence but to desist if that acquiescence was not forthcoming. This inference would have been supported if the jury concluded, as was not unreasonable, that Mrs. Harrington's failure to report the prior incident to the police may have signified some consensual participation on her part, initially or ultimately.

The simple assault instruction should have been granted by the trial court. We are aware that the possibility of a reconstruction of events not directly stated in testimony sometimes presents problems to the trial judge. We have taken pains to point out not only that the judge has a difficult task but that the interest of administration of criminal justice, and respect for the jury's central role in our jurisprudence, is furthered by giving defense counsel the benefit of the doubt. Belton v. United States, supra; Walker v. United States, 135 U.S.App.D.C. 280, 283, 418 F.2d 1116, 1119 (1969).

■ When the trial judge has failed to take into account the reasonable possibility of a lesser offense, the indicated procedure is to remand for a new trial with a properly instructed jury, with authority in the trial judge, after hearing both parties and obtaining the Government's consent, to enter a judgment of the lesser offense if he considers this course in the interest of justice.[3]

■ In the present case there is a concurrent sentence for second degree burglary, for entering the apartment with intent to commit a crime therein. Accordingly the jury did not return a verdict on unlawful entry, which was charged as a lesser-included offense. So far as legal reasoning is concerned, the burglary conviction is not affected by the fact that the crime committed (or intended) is simple assault rather than assault with intent to commit rape.

Accordingly, there is no basis for setting aside the burglary conviction. The sentences being concurrent, it is unlikely that the judge will order a new trial on the charge of assault with intent to commit rape. However, it is not unrealistic to project that a lesser sentence might have been meted on the burglary charge if the jury had convicted only of simple assault. To obviate any possibility of prejudice from the error discussed, our order will reverse the judgment on count 2 and remand for further proceedings. The judgment on count 1, for burglary, will not be affected as such, but the trial judge is directed to resentence on count 1, at the same time he enters a sentence on count 2,—whether this follows a new trial, or as is more probable is entered after a reduction to simple assault.

*Impeachment of Defense Witnesses*

We turn to two contentions relating to impeachment of defense witnesses.

■ 1. After Junior Askew testified on direct, the prosecutor asked him on cross whether he had been con-victed of rape in 1957, and Askew replied that it was assault with intent to commit rape. (Tr. 152.) This impeachment, according to appellant, constituted plain error in that the prosecutor did not receive permission from the court, out of the jury's hearing, to conduct this line of questioning.

Impeachment of the defendant and defense witnesses is a matter of judicial discretion rather than prosecutorial right. Luck v. United States, 121 U.S. App.D.C. 151, 348 F.2d 763 (1965); Davis v. United States, 133 U.S.App.D. C. 167, 409 F.2d 453 (1969). In this case, however, defense counsel failed to object. Appellant replies that counsel was unaware of Askew's record. Even so he could have objected, or moved for mistrial. Appellant himself regards Askew's testimony as being "of marginal worth." (Brief at 24). In the circumstances we do not feel called upon to determine whether, or in what circumstances, counsel may have a duty to announce in advance an intention to impeach a witness through prior conviction.

■ 2. The other contention does identify an area of error, that should be avoided in the event of retrial, although not the kind of plain or prejudicial error that requires reversal. The prosecutor asked a defense witness, Betty Williams, whether she had appeared at the preliminary hearing, obviously intending, if the question was answered in the negative as it was, to characterize her story as a recent fabrication. Error is assigned because the court sustained the objection to defense counsel's effort to show that only tactical reasons were involved, by asking appellant whether his hearing counsel would have called this witness had he thought it would serve any useful purpose. It serves the interest of justice best if we pass by defense counsel's contention, and say that in our view it was improper for the prosecutor to ask the defense witness whether she testified at the preliminary hearing.

---

3. See United States v. Comer, *supra*, 137 U.S.App.D.C. at 221, 421 F.2d at 1156, and cases cited.

This should not be repeated in the event of a new trial.[4]

The primary purpose of the preliminary hearing is to consider whether the government has evidence to justify holding the suspect in custody of the court, whether in physical detention or on conditions of supervised release or bail, pending consideration by the grand jury and, in the event of indictment, pending trial. Of course the suspect may produce witnesses in an effort to persuade the magistrate that the evidence before him, taken as a whole, does not make out a case of probable cause for detention. Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894, cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965). And there may be other reasons why defense counsel may wish to adduce defense testimony, e.g., to guard against switching by a now-favorable witness.

But there may be many situations, so many as to make up the prevailing rather than the exceptional situation, where a defense counsel who is aware of favorable testimony by a witness. that he hopes will eventually be given full credence by a petit jury refrains from presenting it to the magistrate. Counsel may conclude that the magistrate cannot lawfully rule that such testimony negatives probable cause for further proceeding, but must in effect declare that the conflict is one to be resolved by the trial jury.

In our view the law does not permit a prosecutor to argue a claim of recent fabrication solely on the failure of defense witness to testify at the preliminary hearing. To use this as a ground for asking whether the witness testified at the preliminary hearing is to permit a question that has little, if any, materiality but has potentiality for unfair prejudice. The prejudice is deeper if the prosecutor sharpens the contention of recent fabrication in summation, but the very asking of the question may put the core idea in the mind of the trial jury, beyond meaningful opportunity to clarify or expunge. A meaningful attempt to remove the prejudice would require some instruction to the trial jury on the law of preliminary hearing and its limited office. To make the point meaningful, instead of abstract learning, might well require explanation by defense counsel why in fact the witness was not called. All of this involves both the problem of calling counsel to the stand, a procedure to be reserved for genuine emergencies where it is imperative in the interest of justice, and the involvement of the jury in matters (and legal theory) remote from the issues before them for resolution as a trial jury.

We do not deprive the prosecutor of all means of establishing recent fabrication on the part of defense witnesses. He may, e.g., inquire as to whether defense witness disclosed his knowledge under circumstances where that would have been natural and expected.

The judgment of the District Court is reversed on count 2, and the case remanded for resentencing, following either new trial or modification of judgment on count 2, as set forth above.

So ordered.

MacKINNON, Circuit Judge (dissenting in part):

I respectfully dissent from the reversal of the judgment on count 2 and the remand for further proceedings. The majority opinion bases such action upon the claim that the trial court erroneously denied appellant's request to instruct the jury on the lesser included offense of simple assault. In deciding whether to instruct on a lesser included offense we have said that:

[T]he trial court must appraise the evidence bearing on the element required for the charged offense, but not required for the lesser included offense, and make two determinations. The court must first decide whether

---

4. Equally improper, of course, would be any prosecutor's argument based on this question, and answer, on a claim of recent fabrication.

 

there is any *conflict* in the evidence that has been introduced insofar as it bears on that element.

United States v. Comer, 137 U.S.App.D. C. 214, 219, 421 F.2d 1149, 1154 (1970) (emphasis added). Here there is no "conflict" in the evidence as to the assault or as to the sexual acts. Appellant took the stand and denied any involvement whatsoever with the complainant on the night in question and further introduced evidence of an alibi. A finding that appellant was guilty only of simple assault would require a jury to disbelieve a substantial part of the complainant's uncontradicted testimony, rather than to resolve conflicting evidence.

However, in *Comer* we went on to say:

> Even if the trial court finds that the facts bearing upon the element required for the greater offense but not for the lesser are not in dispute and that no evidence introduced explicitly tends to negative a finding of the element in question, the inquiry is not at an end. Rather *the court must appraise all the testimony and evidence to determine whether it is capable of more than one reasonable inference.* Thus in a manslaughter case such as the present one, the inquiry is whether the evidence bearing on malice was so compelling and unequivocal on the issue that a jury finding of no malice would be irrational.

137 U.S.App.D.C. at 219, 421 F.2d at 1154 (emphasis added). Thus, the appropriate inquiry under *Comer* is to determine whether the evidence bearing on the additional elements of rape or attempted rape was so compelling and unequivocal on the issue that a jury finding of assault without a consummated rape or an attempted rape would be irrational.

In my view such conclusion would be irrational because to disbelieve the complainant's testimony on the sexual acts and believe her on the assault would be purely speculative. There is no rational basis in the evidence to find that appellant committed the assaultive acts but did not attempt or commit the sexual acts. The evidence of both acts are indelibly interwoven together. Thus, since I conclude that there was no rational basis in the evidence to support a conviction for simple assault I respectfully dissent from that portion of the majority opinion and from the reversal and the remand that it entails.