Eric A. GLASCOE, Appellant,

v.

UNITED STATES, Appellee.

UNITED STATES, Appellant,

v.

Eric A. GLASCOE, Appellee.

Nos. 85–367, 85–533.

District of Columbia Court of Appeals.

Argued Feb. 25, 1986.
Decided Sept. 2, 1986.

---

Lillian Alvarez McEwen, Washington, D.C., for appellant, cross-appellee.

Robert Carson Godbey, Asst. U.S. Atty., for appellee cross-appellant; with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, and Terence J. Keeney, Asst. U.S. Attys., Washington, D.C., were on the brief.

Before FERREN, TERRY and ROGERS, Associate Judges.

ROGERS, Associate Judge:

■ A jury found appellant Glascoe guilty of sodomy, D.C.Code § 22–3502 (1981), and assault with intent to commit rape while armed, *id.* §§ 501, 3202.[1] The trial court granted his motion for judgment of acquittal of assault with intent to commit rape while armed, and subsequently granted in part the government's motion for reconsideration by entering a conviction for the lesser included offense of assault with a dangerous weapon. Glascoe appeals his conviction for assault with a dangerous weapon, and the government appeals his acquittal for assault with intent to commit rape while armed.[2] Because the government presented sufficient evidence of assault with intent to commit rape while armed, we reverse the judgment of acquittal, and remand with instructions to reinstate the jury's verdict and vacate the conviction for assault with a dangerous weapon.

■ In considering a motion for judgment of acquittal, the trial judge and the appellate court must view the evidence in the light most favorable to the government, *Patterson v. United States*, 479 A.2d 335, 337–38 (D.C.1984); *Boyd v. United States*, 473 A.2d 828, 832 (D.C.1984), and may not "usurp the jury's prerogative of determining credibility, weighing the evidence, and drawing reasonable inferences of fact." *Boyd, supra*, 473 A.2d at 832; *see Glasser v. United States*, 315 U.S. 60, 80 (1941); *In re A.H.B.*, 491 A.2d 490, 496 (D.C.1985). The government does not have to negate every reasonable hypothesis other than an intent to have sexual intercourse, *see Allison v. United States*, 133 U.S.App.D.C. 159, 164 n. 16, 409 F.2d 445, 450 n. 16 (1969), and the case may be removed from the jury "only when there is no evidence upon which a reasonable mind could infer guilt." *Patterson, supra*, 479 A.2d at 338; *see Franey v. United States*, 382 A.2d 1019, 1022 n. 6 (D.C.1978); *Crawford v. United States*, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967); *Curley v. United States*, 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947).

■ To obtain a conviction for assault with intent to commit rape while armed, the government must prove beyond a reasonable doubt that the defendant, while armed, assaulted the complainant with the

---

1. The jury acquitted appellant of kidnapping while armed.

2. The government's appeal of the post-verdict acquittal is not precluded by the double jeopardy clause of the Fifth Amendment. *United States v. Hubbard*, 429 A.2d 1334, 1336–37 (D.C.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569–70, 97 S.Ct. 1349, 1353–54, 51 L.Ed.2d 642 (1977)) (where reversal on appeal would merely reinstate the jury's verdict, government's appeal does not offend policy against multiple prosecutions); *United States v. Wilson*, 420 U.S. 332, 352–53, 95 S.Ct. 1013, 1026–27, 43 L.Ed.2d 232 (1975) ("when a judge rules in favor of the defendant after a verdict of guilty has been entered by trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause").

specific intent to have sexual intercourse by force and without consent. *See United States v. Bryant,* 137 U.S.App.D.C. 124, 130, 420 F.2d 1327, 1333 (1969); *Hammond v. United States,* 75 U.S.App.D.C. 397, 398, 127 F.2d 752, 753 (1942). Specific intent may be inferred from the defendant's conduct. *Higgins v. United States,* 130 U.S. App.D.C. 331, 332, 401 F.2d 396, 397 (1968). Proof of force may be unnecessary if there is evidence that the complainant reasonably believed resistance would lead to death or serious bodily harm; such evidence is sufficient to prove the defendant's intent to overcome resistance by force and the complainant's lack of consent. *See Harley v. United States,* 373 A.2d 898, 902 (D.C. 1977); *cf. Arnold v. United States,* 358 A.2d 335, 340 (D.C.1976) (en banc) (rape). In addition, the assault with a dangerous weapon need not occur simultaneously with the events from which a jury could reasonably infer specific intent to rape. *See United States v. Huff,* 143 U.S.App.D.C. 163, 442 F.2d 885 (1971) (prior rape); *cf. Robinson v. United States,* 388 A.2d 1210, 1213 (D.C.1978) (exposure one week before rape).

Since the jury and the trial judge found that Glascoe assaulted the complainant, and the evidence abundantly supports the finding of an assault with a gun, the remaining question is whether there was sufficient evidence to send to the jury the issue of Glascoe's specific intent to force the complainant to have sexual intercourse. Viewing the evidence, as we must, in the light most favorable to the government, reveals a sequence of events from which a jury reasonably could find that Glascoe had the requisite specific intent to be found guilty of assault with intent to commit rape while armed.

Glascoe first met the complainant in September 1983, when she was eighteen years old. Several days later he asked her for a date while rubbing his penis through his pants; she declined. He saw her again on September 18, and asked her why she would not go out with him. She told him

that she did not want to be bothered and began to walk away. Glascoe grabbed her arm and pushed what she believed to be a gun into her back. He told her that he wanted them to go to his house, and forced her to walk in front of him. The complainant told him that she did not want to go, but she allowed herself to be pushed. On their way to his house they stopped outside a restaurant, and Glascoe went inside for less than a minute. The complainant did not leave because she was afraid of the gun. When she saw two friends, who walked by the restaurant, she asked them to accompany her home, but they were going in another direction; one of her friends told her not to worry about Glascoe because she (the friend) had been out with him.

Upon arriving at Glascoe's house, Glascoe told the complainant to go upstairs. When she refused, he pushed her upstairs, holding the gun in her back, and ordered her to go into a bedroom. Glascoe followed and sat on the bed. He put the gun on an adjacent dresser, and told her that he wanted to "make love." She refused. Glascoe began rubbing her legs. She told him to stop. He grabbed at the top part of her shirt. She jerked away, and went into an adjoining bathroom. When she returned, she asked him why he was doing this to her when he had a girlfriend; she had seen a picture in the house which she thought was of Glascoe's girlfriend. He told her she was talking too much.

The complainant then left the bedroom. When she reached the top of the stairs, Glascoe called to his dog, which looked like an Alaskan husky, and told her that the dog would bite her if she did not return. She returned to the bedroom, and Glascoe pulled out a long knife, commenting that he used it to clean his fingernails. She told him that if he was going to kill her, to go ahead and do it. Glascoe replied, "I ain't going to kill you yet."

Crying, the complainant tried again to leave. This time Glascoe picked her up, put her on the bed, and put his penis into

her mouth. He also attempted to remove her shirt. She pushed him away and went into the bathroom to wash her mouth. When she returned, Glascoe repeated that he wanted to make love. She agreed to do so if he would go downstairs and telephone her home to see if her mother was there since she (the complainant) was supposed to babysit. When he left the bedroom and went downstairs, she broke a window and began to jump out. Glascoe tried to stop her, but she fell to the ground, and ran from the house.

The complainant went into a subway station across the street and told several strangers what had happened. They accompanied her to her girlfriend's house, which was across the street from her own; she went there first because she did not want to upset her mother. She grabbed her girlfriend's mother and began crying. Her mother was called, and the complainant told her what had happened; her mother contacted the police. The complainant gave a complete statement to the police a week later.

■ From this evidence a reasonable juror acting reasonably could find that Glascoe assaulted the complainant in his house with the specific intent to have sexual intercourse through vaginal penetration, and that he intended to have such sexual intercourse by force and without her consent. Glascoe rubbed his penis while asking the complainant for a date, he demanded twice that they "make love," he rubbed her legs, and he attempted twice to remove the complainant's blouse. Even after the oral sodomy, he did not let her leave his home, but repeated that he wanted to "make love." A reasonable jury could find that his actions when they first arrived in the bedroom were consistent with preparing to have sexual intercourse, and that his later actions suggested he was not finished with her once he had forced her to commit sod-

omy. The absence of more explicit actions or language did not require the jury to ignore other evidence from which it reasonably could infer an intent to achieve vaginal penetration.

■ Much of the same evidence could also lead a reasonable juror to conclude that Glascoe intended to accomplish the penetration by force. The first time Glascoe said he wanted to "make love" occurred immediately after he had forced her into the bedroom at gunpoint and while he had a gun within reach; the second time was after he threatened her with his dog and while he had a long knife in his hands; he also told her that he was not yet ready to kill her. He repeatedly demonstrated that he would get his way against the complainant's will: in addition to forcing her to go to his home and then to go upstairs, he committed oral sodomy on her despite her continuing protestations. His determination to escalate the pressure was indicated by his use of the dog to keep her in the house and the showing of the knife. Because the complainant continued to resist his efforts and twice tried to leave the house, a jury could reasonably infer that Glascoe realized he would have to exert additional pressure if he wanted to have intercourse with her. The absence of other physical abuse did not require the jury to ignore the evidence from which it could properly find that Glascoe had the requisite specific intent.[3]

■ The jury could also reasonably credit the complainant's testimony that she had feared for her life. She described Glascoe's repeated and escalating threats, how he had forced her to commit sodomy and how she ultimately escaped. Broken glass was found outside of the window from which she had jumped. Her reactions after escaping—crying in her neighbor's arms

---

**3.** Glascoe's reliance on *United States v. Tremble,* 152 U.S.App.D.C. 363, 470 F.2d 1272 (1972), is clearly misplaced. In that case the defendant exposed himself, lay on top of the complainant, and seized her purse; he left without making a threat or attempting to remove her clothing. *Id.* at 365, 470 F.2d at 1274. Thus the evidence failed to indicate any intent to achieve penetration by force and violence and against her consent. *Id.*

and promptly reporting what happened to her mother—also provided the jury with evidence supporting the credibility of her testimony.[4] *See Harley, supra,* 373 A.2d at 899, 901–02 (sufficient evidence on lack of consent where complainant testified appellant grabbed her by the hair, struck her in the eye, dragged her into a nearby playground, did not threaten her with a weapon, covered her mouth at times and told her to be quiet); *Bryant, supra,* 137 U.S.App. D.C. at 128, 420 F.2d at 1331 (sufficient corroboration of assault with intent to rape provided by complainant's torn shoulder strap, reasonably prompt complaint to police, bruises and shaking).

Glascoe's contention that the jury's verdict of acquittal on the kidnapping count meant it had found that the complainant had consented to her presence in the bedroom, is based on speculation. *See United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984) (jury may return inconsistent verdicts); *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) (same); *Steadman v. United States,* 358 A.2d 329, 332 (D.C. 1976) (same). The evidence before the jury entitled it to find that the complainant's belief about Glascoe's intent and his danger to her were reasonable under the circumstances. *See Boyd, supra,* 473 A.2d at 832. She did not know Glascoe, and had no way of knowing what he might try to do with the gun or knife. Although she had not tried to escape when Glascoe went into the restaurant, the chronology and nature of the events at his house provided a basis upon which the jury could have found that while at the restaurant she may have thought, in view of her friend's advice, that she could refuse his overtures without endangering her life, but that her subsequent experiences with him in the isolation of his house gave her reason to change her mind.

Accordingly, since the trial court erred in finding there was no evidence upon which a reasonable juror could infer guilt, the judgment of the trial court acquitting Glascoe of assault with intent to commit rape while armed is reversed and the case remanded with instructions to enter a judgment of guilty on that charge and to vacate the conviction for assault with a dangerous weapon.[5]

*Reversed and remanded.*

---

4. These corroborating factors, although helpful in determining whether to reverse the trial court's judgment of acquittal, are unnecessary to sustain a conviction of assault with intent to rape while armed. *See Gary v. United States,* 499 A.2d 815, 833–34 (D.C.1985) (en banc).

5. In view of our disposition, Glascoe's appeal, contending that the trial court erred in finding him guilty of assault with a dangerous weapon because neither the gun nor the knife was proved to be a dangerous weapon, is dismissed as moot.